# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 23-50627

FREE SPEECH COALITION, INCORPORATED; MG PREMIUM, LIMITED; MG FREESITES, LIMITED; WEBGROUP CZECH REPUBLIC, A.S.; NKL ASSOCIATES, S.R.O.; SONESTA TECHNOLOGIES, S.R.O.; SONESTA MEDIA, S.R.O.; YELLOW PRODUCTION, S.R.O.; PAPER STREET MEDIA, L.L.C.; NEPTUNE MEDIA, L.L.C.; JANE DOE; MEDIAME, S.R.L.; MIDUS HOLDINGS, INCORPORATED,

*Plaintiffs-Appellees,*

v.

ANGELA COLMENERO, ATTORNEY GENERAL, STATE OF TEXAS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF TEXAS,
AUSTIN DIVISION IN CASE NO. 1:23-CV-00917-DAE,
HONORABLE DAVID ALAN EZRA, SENIOR DISTRICT JUDGE

## APPELLEES' OPPOSITION TO MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

JEFFREY K. SANDMAN
WEBB DANIEL FRIEDLANDER LLP
5208 Magazine Street, Suite 364
New Orleans, Louisiana 70115
(978) 886-0639

DEREK L. SHAFFER
MICHAEL T. ZELLER
ARIAN J. KOOCHESFAHANI
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

SCOTT L. COLE
QUINN EMANUEL URQUHART &
    SULLIVAN, LLP
300 West Sixth Street, Suite 2010
Austin, Texas 78701
(737) 667-6100

*Attorneys for Plaintiffs-Appellees*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have a financial interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Plaintiff-Appellees: Free Speech Coalition, Inc., MG Premium Ltd, MG Freesites Ltd, WebGroup Czech Republic, a.s., NKL Associates, s.r.o., Sonesta Technologies, s.r.o., Sonesta Media, s.r.o., Yellow Production s.r.o., Paper Street Media, LLC, Neptune Media, LLC, Jane Doe, MediaME SRL, Midus Holdings, Inc.

2. Counsel for Plaintiff-Appellees: Derek L. Shaffer, Scott L. Cole, Michael T. Zeller, Arian J. Koochesfahani, Thomas D. Nolan, Nicoletta Malogioglio, Taylor Comerford, and Emily Couture of Quinn Emanuel Urquhart & Sullivan, LLP; Jeffrey K. Sandman of Webb Daniel Friedlander, LLP.

The undersigned counsel further certifies that:

- Free Speech Coalition, Inc. has no parent corporation;

- MG Premium Ltd is a wholly-owned subsidiary of MG CY Holdings Ltd, which is wholly-owned, through affiliates,[1] by 1000498476 Ontario Inc. (OBCA).

- MG Freesites Ltd is a wholly-owned subsidiary of MG CY Holdings Ltd, which is wholly-owned, through the same affiliates identified in note 1, by 1000498476 Ontario Inc. (OBCA).

- WebGroup Czech Republic, a.s. has no parent corporation;

- NKL Associates s.r.o. has no parent corporation;

---

[1] Licensing IP International S.a.r.l.; MindGeek S.a.r.l.; ECP One Ltd BVI; ECP Three Ltd BVI; ECP Four Ltd BVI; ECP Alpha Holding Ltd BVI; ECP Alpha LP; SIE Holdings Limited; ECP Capital Partners Ltd BVI; Roccon Enterprises, Inc.; and FMSM Holdings, Inc. (OBCA).

- Sonesta Technologies, s.r.o. is a wholly-owned subsidiary of United Communication Hldg II, a.s.;

- Sonesta Media, s.r.o. is a wholly-owned subsidiary of United Communication Hldg II, a.s.;

- Yellow Production, s.r.o. has no parent corporation;

- Paper Street Media, LLC is a wholly-owned subsidiary of Paper Street Holdings, Inc.;

- Neptune Media, LLC is a wholly-owned subsidiary of Paper Street Holdings, Inc.;

- MediaME SRL has no parent corporation;

- Midus Holdings, Inc., has no parent corporation; and

- No publicly held corporation owns 10 percent or more of any of the above-listed entities' stock

Dated:  September 13, 2023

*s/ Derek L. Shaffer*
Derek L. Shaffer

*Counsel for Appellees*

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ I

TABLE OF AUTHORITIES ................................................................. IV

INTRODUCTION ...............................................................................1

BACKGROUND ................................................................................4

I.     PROCEDURAL HISTORY ...........................................................4

II.    THE DISTRICT COURT'S ORDER..............................................5

ARGUMENT ..................................................................................6

I.     A STAY WOULD UPEND THE STATUS QUO ........................................6

II.    TEXAS IS LIKELY TO LOSE ITS APPEAL................................8

      A.    Texas Lacks Any Plausible Defense of The "Age Verification" Provision............................................................8

      B.    Texas Lacks Any Reasonable Defense Of The "Health Warnings" Provision. ..................................................14

      C.    A Subset Of Appellees Is Likely Protected By Section 230...............18

III.   IRREPARABLE HARMS AND THE EQUITIES FAVOR APPELLEES.................................................................19

CONCLUSION ................................................................................20

CERTIFICATE OF SERVICE ...............................................................22

CERTIFICATE OF COMPLIANCE...........................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*303 Creative LLC v. Elenis*,
    143 S. Ct. 2298 (2023) ........................................................................15

*ACLU v. Ashcroft*,
    322 F.3d 240 (2003)............................................................................12

*All. for Hippocratic Med. v. U.S. Food & Drug Admin.*,
    2023 WL 5266026 (5th Cir. Aug. 16, 2023) ......................................19

*Americans for Prosperity Found. v. Bonta*,
    141 S. Ct. 2373 (2021) .......................................................................10

*Ashcroft v. ACLU*,
    542 U.S. 656 (2004)..........................................................1, 7, 8, 10, 12

*Brewer v. City of Albuquerque*,
    18 F.4th 1205 (10th Cir. 2021) ..........................................................14

*Brown v. Ent. Merchants Ass'n*,
    564 U.S. 786 (2011).............................................................................13

*Central Hudson Gas & Electric Corporation v. Public Service
    Commission of New York*,
    447 U.S. 557 (1980).............................................................................15

*CTIA - The Wireless Association v. City of Berkeley, California*,
    928 F.3d 832 (9th Cir. 2019) ........................................................16, 17

*Doe v. MySpace*,
    528 F.3d 413 (5th Cir. 2008) ........................................................18, 19

*E.T. v. Paxton*,
    19 F.4th 760 (5th Cir. 2021) ...............................................................20

*Elrod v. Burns*,
    427 U.S. 347 (1976)..............................................................................19

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
559 U.S. 229 (2010).........................................................16

*Miller v. California*,
413 U.S. 15 (1973)...........................................................9

*Nat'l Inst. of Fam. & Life Advocs. v. Becerra*,
138 S. Ct. 2361 (2018)..............................3, 13, 15, 16, 17

*Nat'l Urb. League v. Ross*,
977 F.3d 698 (9th Cir. 2020) ...........................................7

*NetChoice v. Paxton*,
49 F.4th 439 (5th Cir. 2022) ..........................................12

*NetChoice, LLC v. Paxton*,
142 S. Ct. 1715 (2022).....................................................7

*Randell v. Johnson*,
227 F.3d 300 (5th Cir. 2000) ..........................................14

*Reed v. Town of Gilbert, Ariz.*,
576 U.S. 155 (2015).......................................................13

*Reno v. ACLU*,
521 U.S. 844 (1997)..........................1, 7, 11, 12, 13, 14

*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021) ..............................................8

*Ruiz v. Estelle*,
650 F.2d 555 (5th Cir. 1981) ...........................................6

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011).......................................................13

*Texas v. United States*,
787 F.3d 733 (5th Cir. 2015) ...........................................6

*Thomas v. Ameritas Life Ins. Corp.*,
34 F.4th 395 (5th Cir. 2022) ............................................9

*Turner Broad. Sys., Inc. v. F.C.C.*,
   520 U.S. 180 (1997)......................................................................13, 14

*United States v. Hansen*,
   143 S. Ct. 1932 (2023) ........................................................................9

*United States v. Stevens*,
   559 U.S. 460 (2010)........................................................................9, 10

*Virginia v. Am. Booksellers Ass'n, Inc.*,
   484 U.S. 383 (1988)...........................................................................19

*Zauderer v. Office of Disciplinary Counsel*,
   471 U.S. 626 (1985)......................................................................15, 16

## Statutes

Tex. Civ. Prac. & Rem. Code § 129B *et seq*. ...............................8, 14, 15

**INTRODUCTION**

Like the federal government twice before it, Texas has enacted legislation that restricts a broad swath of protected speech on the internet under auspices of protecting minors from exposure to sexually explicit material. The Supreme Court has twice held that strict scrutiny applies to such laws, meaning only the least restrictive means may be employed. And the Supreme Court has twice invalidated federal laws for failing to adopt the least restrictive means—namely content-filtering software to ensure speech was restricted for minors, but not adults. *See generally Reno v. ACLU*, 521 U.S. 844 (1997); *Ashcroft v. ACLU*, 542 U.S. 656 (2004). Texas has defied that on-point instruction by ignoring the ready availability of content filtering. Still worse, Texas has added *new* constitutional defects by gerrymandering *this* law so it is speaker-based and viewpoint-discriminatory, designed to stigmatize the "porn" industry and all its patrons.

Without seriously disputing that the law is invalid under binding Supreme Court precedent, Texas suggests that the Supreme Court's instruction is outdated. But as the district court correctly recognized in preliminarily enjoining the law, that is not a judgment for Texas—or a lower federal court—to make. It certainly is not grounds for entering the extraordinary stay Texas seeks here. Instead, Texas may seek to pursue its appeal on an expedited basis, thereby enabling due consideration of the record below (which establishes that

technological advancements have, if anything, *fortified* the Supreme Court's reasoning by improving the effectiveness and availability of content filtering).[2]

The Texas law at issue, H.B. 1181, has been preliminarily enjoined before it became enforceable, in order to prevent a pronounced threat to ongoing, protected expression over the internet. That is precisely the approach that the Supreme Court endorsed in *Reno* and *Ashcroft*, both of which affirmed unstayed preliminary injunctions. Here, the district court issued an 81-page opinion finding that H.B. 1181 likely violates the First Amendment, as well as Section 230 of the Communications Decency Act, that it poses multiple forms of irreparable harm, and that it warrants a preliminary injunction preserving the status quo. Considering that the district court's exercise of its discretion follows directly from *Reno* and *Ashcroft*, it is unlikely to be reversed on appeal.

Contrary to Texas's depiction of the statute, it burdens and penalizes core, protected expression in ways that violate black-letter First Amendment law, as the district court found and review of the statutory text confirms. Texas cannot defend the statute's age-verification requirements as limited to obscene (i.e., unprotected) speech. By its terms, the law requires websites with *more than one-third* material obscene for *minors* to verify the ages of *all* visitors by collecting identifying information, and otherwise to bar *all* content. As the record confirms and Texas ignores, this reaches substantial amounts of protected speech, including

---

[2] Appellees consent to any expedited schedule Texas may propose or this Court may set, asking only that they be afforded equal time for their answering brief as Texas is for its opening brief.

on Appellees' websites, and deters many adults from accessing that speech given the palpable risk that compromising information may be exposed when shared over the internet, particularly to access sensitive content.

While unduly burdening disfavored speakers, the statute is glaringly porous. It exempts all or most social media (due to its "one-third" threshold requirement), and expressly exempts search engines and news sites, despite minors' easy and existing access to precisely the same adult content via *those* conduits, which are left entirely *unregulated.* Such gross underinclusiveness points to viewpoint- and speaker-based discrimination—quite different from an evenhanded effort to protect minors from inappropriate content. Beyond rendering the law unconstitutional, this underinclusiveness refutes any notion that enforcement of the law at any time, let alone *instanter*, is imperative to protect minors, all of whom can continue to receive the same content from other ubiquitous sources that remain designedly exempt.

Furthermore, the "health warnings" that are being compelled confirm that "viewpoint discrimination is inherent in the design and structure of this Act." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2379 (2018) (Kennedy, J., concurring, Alito, J., Gorsuch, J., and Roberts, C.J., joining). The law purports to force Appellees to propagandize for Texas by warning all users that pornography is, e.g., "proven to harm human brain development," and by directing users to a "substance abuse and mental health" helpline, even though such warnings are scientifically unsupported and antithetical to those compelled to broadcast them. If Texas may compel speech in this fashion, then it will be open

season for the government to demand like "health warnings" from providers whose offerings touch the disfavored side of issues that divide Americans, from firearms, to abortions, to transgender counseling, etc. By conscripting unwilling speakers to broadcast ideologically-loaded pseudo-science with which they vehemently disagree, Texas is striking directly at the First Amendment by any plausible account.

In sum, the Texas law is overbroad, underinclusive, and chilling, all in stark violation of controlling precedent. Enforcement should not proceed before this appeal concludes, which can happen expeditiously while the preliminary injunction preserves the status quo.

**BACKGROUND**

## I.     PROCEDURAL HISTORY

On August 4, 2023, Appellees filed suit against Angela Colmenero, the interim Attorney General for Texas, to enjoin enforcement of H.B. 1181 ("Act"), alleging violations of the First Amendment and Section 230 of the Communications Decency Act ("CDA"). ROA.16-30. Appellees also moved for a preliminary injunction, backed by evidence from experts attesting to relevant scientific and technological premises and fact declarations attesting to the nature of Appellees' websites and the burdens imposed by the Act. ROA.54-83. The district court set an expedited schedule to enable a ruling in advance of the Act's effective date of September 1, 2023; briefing concluded on August 21, 2023, after the court partially granted Texas's requested briefing extension. ROA.316-17, 326-27.

At the hearing on August 23, 2023, Texas called its expert on age-verification technologies. ROA.1834. He acknowledged that "adult images and pornographic materials and that sort of thing are widely available on social media sites," that "the same is true for search engines," and that the "technology [of content filtering] itself works." ROA.1850-51.[3] On August 31, 2023, the court issued an 81-page decision preliminarily enjoining enforcement. ROA.1690-1770. On September 1, 2023, Texas moved below for a stay pending appeal, which Appellees opposed on September 5, and the district court denied on September 6. ROA.1793-1811. Having filed a notice of appeal on August 31, Texas filed its instant stay motion with this Court on September 8, 2023. ROA.1771-72.

## II.     THE DISTRICT COURT'S ORDER

The district court explained that both provisions of the Act likely violate the First Amendment. ROA.1709-58. Addressing the "age verification" provision, it determined that the provision is overbroad, chills adult access to protected speech, and is subject to strict scrutiny, applying seminal precedents including *Ashcroft* and *US v. Stevens*. ROA.1709-12, 1721-32. The court then found that the provision fails strict scrutiny because it is severely underinclusive and content filtering affords a less restrictive, *more* effective means of protecting minors, which the Legislature failed to consider. ROA.1715-17, 1732-41.

---

[3] Texas's expert stated that some Appellees have "age verification built into their systems." ROA.1854. But that statement is based solely on Pornhub's age verification process for adult *performers* in posted videos. ROA.403-04 (at ¶ 11 & at n.2 (citing a press release about verifying performers' ages)). The Act imposes an entirely different process, applying not to performers, but restricting *visitors*' access to the websites.

Turning to the "health warnings," the district court determined that commercial speech doctrines did not apply, because the "warnings" target pornography by its content so as to warrant strict scrutiny, which the "warnings" fail. ROA.1742-49. The court further determined that the "warnings" would fail even under commercial-speech doctrines, not least because they are scientifically inaccurate, ideologically controversial, and practically problematic. ROA.1749-58.

The district court additionally determined that the Act likely violates Section 230 as to certain Appellees because the Act effectively holds them liable for harms the Legislature attributes to third-party content and because, as the district court found based on the uncontested evidence, they host only third-party content. ROA.1758-63.

Finally, the district court found that Appellees face irreparable harm not only from loss of First Amendment freedoms, but also from loss of their Section 230 immunities, unrecoverable compliance costs ("at minimum, $40,000.00 per 100,000 verifications"), and harm to their customer goodwill. ROA.1699, 1763-67. No commensurate interest weighed on the other side of the scale, as Texas has no interest in enforcing unconstitutional laws. ROA.1767.

## ARGUMENT

## I.    A STAY WOULD UPEND THE STATUS QUO

The district court properly maintained the status quo by enjoining enforcement of the Act before it was ever enforced. In appropriate cases, a stay "seeks to maintain the status quo." *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir.

1981).  Here, by contrast, it is the "injunction [that] merely maintains the status quo."  *Texas v. United States*, 787 F.3d 733, 768 (5th Cir. 2015); *see also, e.g.*, *Nat'l Urb. League v. Ross*, 977 F.3d 698, 703 (9th Cir. 2020) (denying a stay because it would upset the status quo); *see also NetChoice, LLC v. Paxton*, 142 S. Ct. 1715–16 (2022) (vacating a stay that did upset the status quo).

In this specific context, the Supreme Court has endorsed unstayed preliminary injunctions.  In both *Reno v. ACLU* and *Ashcroft v. ACLU*, the Court upheld preliminary injunctions against bans on making sexual material available to minors over the internet absent age verification.  521 U.S. 844 (1997); 542 U.S. 656 (2004).  The Court noted the "important practical reasons to let the injunction stand pending a full trial on the merits."  *Ashcroft*, 542 U.S. at 670.  "There is a potential for extraordinary harm and a serious chill upon protected speech.  The harm done from letting the injunction stand pending a trial on the merits, in contrast, will not be extensive.  No prosecutions have yet been undertaken under the law, so none will be disrupted if the injunction stands."  *Id.* at 671 (cleaned up).

This instruction calls for maintaining the status quo here.  Texas's pursuit of an interim stay confirms its intent to enforce the Act against Appellees, underscoring why protections should remain in place pending this Court's considered judgment.  Any dissolution of the preliminary injunction should reflect full consideration of the record, briefing, and argument, all of which can be expedited.

## II. TEXAS IS LIKELY TO LOSE ITS APPEAL

This Court "applie[s] the abuse of discretion standard on review of a preliminary injunction." *Ashcroft*, 542 U.S. at 664 (2004). "If the underlying constitutional question is close, therefore, we should uphold the injunction and remand for trial on the merits." *Id.* at 664–65. But the unconstitutionality of the Act is not a close question; it jumps out in multiple respects.

### A. Texas Lacks Any Plausible Defense of The "Age Verification" Provision.

The "age verification" provision does not withstand scrutiny. Under the Act, a commercial website "more than one-third of which is sexual material harmful to minors" must employ "reasonable age verification methods[.]" Tex. Civ. Prac. & Rem. Code ("Act") § 129B.002(a). Visitors must therefore comply with hazy requirements to (a) "provide digital identification" or (b) "comply with a commercial age verification system" that uses either "government-issued identification" or "a commercially reasonable method that relies on public or private transactional data." *Id.* § 129B.003; *see also* ROA.1718-20. It is undisputed that the Act *expressly* exempts search engines and news media, and *de facto* exempts most social media sites, by virtue of its "more than one-third" threshold requirement. Act § 129B.005; ROA.1850, 1877-81. It is thus undisputed that the Act invites websites to dodge age verification entirely, provided only that at least 67% of their content passes muster for minors.

In pursuit of a stay, Texas emphasizes Appellees' burden, claiming Appellees cannot show facial invalidity because too much of Appellees' content is

obscene.[4]  Mot. at 7-11.  Yet this argument is both newly minted and thinly conceived.  *See Rollins v. Home Depot USA*, *Inc.*, 8 F.4th 393, 397 (5th Cir. 2021). Texas made no such argument in its 19-page motion seeking a stay below. ROA.1793-1811.  In opposing a preliminary injunction, Texas claimed without elaboration that Appellees did not carry their burden, then made no mention of it at the hearing.  ROA.358, 1868-93.  This unpreserved point should not ground an extraordinary stay.  *See Thomas v. Ameritas Life Ins. Corp.*, 34 F.4th 395, 402 (5th Cir. 2022) (cleaned up).

Regardless, the argument defies controlling law and the evidentiary record. To be clear, Texas is wrong to claim that Appellees have conceded any content is obscene[5] and that Appellees have limited themselves to a facial challenge. ROA.632.  Rather, Appellees made a straightforward showing of facial overbreadth—one aspect of their First Amendment challenge—by showing that "a substantial number of [the Act's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep."  *United States v. Stevens*, 559 U.S. 460, 473 (2010) (cleaned up).  Texas urges a different standard, requiring Appellees to show the Act burdens "substantially *more* non-obscene pornography than obscenity."  Mot. at 10 (emphasis added).  But this "substantially more" standard is of Texas's own invention.  Texas cites to *United States v. Hansen*, but

---

[4]  Texas has no basis to limit Appellees to a facial challenge or suggest that the preliminary injunction be narrowed to as-applied relief.  No such argument was made below or is supported by the evidentiary record.

[5]  Nor does *Miller v. California* provide "plain examples" of depictions that would qualify as "obscene" under its tripartite test.  413 U.S. 15, 25 (1973).

*Hansen* applied no such standard, concluding instead that the law at issue regulated conduct. 143 S. Ct. 1932, 1947 (2023). The correct standard, articulated by the Supreme Court, asks whether the Act "effectively suppresses a large amount of speech that adults have a constitutional right to receive," *Ashcroft*, 542 U.S. at 665 (cleaned up), considering the text, evidence, and common sense as appropriate.

Notably, the Supreme Court often has found facial overbreadth from statutory text alone. Consider *United States v. Stevens*, confronting a law regulating depictions of animal cruelty. 559 U.S. 460, 464 (2010). The Court found the law overbroad because of the text's "alarming breadth." *Id.* at 474. "Our construction of § 48 decides the constitutional question" whether "§ 48 is not so limited but is instead substantially overbroad[.]" *Id.* at 481–82. Or take *Americans for Prosperity Foundation v. Bonta*, where the Court reviewed a regulation requiring "charitable organizations [to] disclose … the identities of their major donors." 141 S. Ct. 2373, 2379 (2021). The Court "ha[d] no trouble concluding here that the … disclosure requirement is overbroad." *Id.* at 2387. "The lack of tailoring to the State's investigative goals is categorical—present in every case[.]" *Id.* By contrast, the Supreme Court has never required what Texas demands by way of quantification—comparing the sum total of unconstitutional applications against the regulated cyberspace universe—before adjudging the law facially overbroad under the First Amendment. Indeed, because the Act "offers no guidance as to how to calculate the 'one-third'—whether it be the number of files, total length, or size"—the Act's vagueness precludes the showing Texas demands. ROA.1720.

*Reno* is instructive. There, as here, the district court issued a preliminary injunction after receiving evidence "describ[ing] the character and the dimensions of the Internet, the availability of sexually explicit material in that medium, and the problems confronting age verification for recipients of Internet communications." 521 U.S. at 849. Two CDA sections proscribing the online distribution of material inappropriate for minors absent age verification were deemed overbroad based on "the many ambiguities concerning the scope of [their] coverage." *Id.* at 870–74. Then, when the next statutory iteration returned in *Ashcroft*, in the form of COPA, it was apparent once again that it was likely overbroad. 542 U.S. at 664, 670.

Here, the overbreadth is equally clear. By its express design, the "age verification" requirement sweeps in vast amounts of protected speech. As Texas acknowledges, the Act's trigger is defined in terms of content deemed inappropriate "for minors" alone, even though "some content that is inappropriate for minors is not obscene by adult standards," Mot. at 7 (citations and quotations omitted). Further, because "the age-verification requirements apply before the user enters their websites," exceeding the one-third threshold triggers restrictions on "*all* their content." Mot. at 16 (emphasis added). As the district court observed, "[b]ecause most sexual content is offensive to young minors, the law covers virtually all salacious material. This includes sexual, but non-pornographic, content posted or created by Plaintiffs. And it includes Plaintiffs' content that is sexually explicit and arousing, but that a jury would not consider 'patently offensive' to adults, using community standards and in the context of online webpages." ROA.1712-13. The unrebutted record evidence, which Texas ignores,

reinforces these conclusions. Appellees' websites incontestably host substantial amounts of non-obscene content. ROA.674-75, 679, 681, 684-87, 690. Appellees' websites include, for example, blog posts advising women on what to expect following a hysterectomy, and the content on one of Appellees' websites is *exclusively* "soft core" nude modeling. ROA.675, 684. The Act's text and the evidence thus amply combine to establish, preliminarily, that the Act is *likely* overbroad under settled First Amendment jurisprudence.

Nor does Texas grapple with the district court's finding that the Act, while sweeping in vast swaths of protected expression, will chill that expression by requiring "age verification." As the district court found, many adults will be deterred by demands to furnish personal information, especially identifying information, over the internet where it may be leaked, hacked, or exploited— particularly in the context of accessing sensitive content revealing users' sexual preferences. ROA.1728-32; *see also ACLU v. Ashcroft*, 322 F.3d 240, 259 (2003). To make matters worse, the Act does not even prohibit the external transmission of personal information during the age-verification process. ROA.1730, 1848. Beyond the demonstrated threat of hacks, "the injury occurs because individuals know the information is at risk. . . ." ROA.1730-31. Technological advances have only exacerbated this concern, as "[u]sers today are more cognizant of privacy concerns, data breaches have become more high-profile, and data related to users' sexual activity is more likely to be targeted." ROA.1731-32. The consequent

chilling of protected speech mandates strict scrutiny, just as the Supreme Court held in *Reno* and *Ashcroft*.[6]  *See* 521 U.S. at 876; 542 U.S. at 673.

If anything, strict scrutiny is more imperative here than it was in *Reno* or *Ashcroft*.  Unlike the federal laws at issue there, the Act reflects viewpoint- and speaker-based discrimination, as the anti-porn "health warnings" confirm.  Texas's concerted effort to target the "porn industry" and to turn away all users (not just minors) "raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 138 S. Ct. 2361, 2376 (2018) (cleaned up); *see also Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 165, 169 (2015); *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 564 (2011).  Considering its claimed purposes, it is anomalous for the Act to exempt search engines, through which the exact same content "can be extracted from Plaintiffs' websites regardless of age verification," and social media, which "can maintain entire communities and forums (i.e., subreddits), dedicated to posting online pornography with no regulation under H.B. 1181," as the record evidence below proved and the district court found.  ROA.1715-18, 1734-35; *see also Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 802 (2011).  Indeed, "pop-up ads, not pornographic websites, are the most common forms of sexual material encountered by adolescents."  ROA.1735.

---

[6] *NetChoice v. Paxton* is not to the contrary.  49 F.4th 439 (5th Cir. 2022).  There, this Court rejected a facial overbreadth challenge because the law was chilling censorship, not speech, *id.* at 450; because "there are no third parties to chill," *id.* at 451; and because the law's "language renders implausible many of the Platforms' extreme hypothesized applications of the law," *id.* at 452.  This case differs on all three counts, while closely paralleling *Reno* and *Ashcroft*.

These "substantial exemptions, including material most likely to serve as a gateway to pornography use," are fatal to any claim of proper tailoring. ROA.1717. There is, as the district court found, "zero evidence that the [Texas] legislature even considered the law's tailoring." *Id.* at 51; *see also Reno*, 521 U.S. at 858 n.24; *Turner Broad. Sys., Inc. v. F.C.C.*, 520 U.S. 180, 195–96 (1997); *Brewer v. City of Albuquerque*, 18 F.4th 1205, 1255 (10th Cir. 2021). And this record only bolsters *Ashcroft*'s identification of content-filtering software installed on minors' devices as a less restrictive alternative that constitutes "the definition of narrow tailoring." ROA.1732-41. "[A]s opposed to age verification, [it] can more precisely screen out sexual content for minors without limiting access to other speech." ROA.1723. Unless and until the Supreme Court "overrul[es] its own decisions," reversal of the district court's conclusion as to the "age verification" provision is unlikely. *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) (cleaned up).

## B. Texas Lacks Any Reasonable Defense Of The "Health Warnings" Provision.

The "health warnings" provision is indefensible. Under the Act, websites must display on their landing pages and every advertisement a "TEXAS HEALTH AND HUMAN SERVICES WARNING." Act § 129B.004. Every webpage must include a bulletin for the "U.S. SUBSTANCE ABUSE AND MENTAL HEALTH SERVICES" helpline. *Id.* The mandatory warnings must state in 14-point font:

> Pornography is potentially biologically addictive, is proven to harm human brain development, desensitizes brain reward circuits, increases conditioned responses, and weakens brain function. . . . Exposure to this content is associated with low self-

esteem and body image, eating disorders, impaired brain development, and other emotional and mental illnesses. . . . Pornography increases the demand for prostitution, child exploitation, and child pornography.

*Id.* § 129B.004(1). The warning must direct viewers to seek out "LOCAL TREATMENT FACILITIES, SUPPORT GROUPS, AND COMMUNITY-BASED ORGANIZATIONS" via a specified telephone number. *Id.* § 129B.004(2).

Such compulsion of speech is presumptively unconstitutional. *See, e.g., 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2314 (2023). Although Texas attempts to argue that the Act regulates commercial speech, the district court rightly disagreed. After carefully analyzing the text, evidence, and seminal precedents—including the Supreme Court's recent decision in *National Institute of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018), which struck government-mandated disclaimers regarding abortion services for clinics opposed to them—the district court concluded that the "warnings" are content-based compulsions subject to strict scrutiny, which they concededly cannot withstand. ROA.1742-49.

By urging lesser scrutiny, Texas disregards the Supreme Court's teachings and embarks down a worrisome path. Texas advocates for "rational-basis review" under *Zauderer v. Office of Disciplinary Counsel* or, alternatively, intermediate scrutiny under *Central Hudson Gas & Electric Corporation v. Public Service Commission of New York*. Mot. at 11-15 (citing 471 U.S. 626 (1985), then 447 U.S. 557 (1980)). But neither is apt or would change the result if applied.

*Zauderer* upheld a basic requirement that an attorney's advertising disclose "purely factual and uncontroversial information about the terms under which [the attorney's] services will be available," using a standard quite different from rational-basis review. 471 U.S. at 651. The district court here explained why the "health warnings" go categorically beyond what *Zauderer* permits because they are "unduly burdensome"—they "risk swallowing up the entire advertisement" and "themselves are somewhat deceptive." ROA.1753. They also fail at the threshold because they are "deeply controversial" and "are either inaccurate or contested by existing medical research," such that "*Zauderer* cannot apply." ROA.1754-58.

In taking a contrary view, Texas runs smack into the Supreme Court's recent holding in *Becerra*. 138 S. Ct. at 2372. Moreover, it whistles past the district court's findings when it claims the Act merely "warns about potential risks associated with pornography use and truthfully notes the existence of a national telephone hotline." Mot. at 11. As the district court found, and the record evidence shows, the warnings make affirmative claims of causation and association that are false at worst and scientifically contested at best. ROA.1756-58. Nor is it pertinent for Texas to note (Mot. at 11) that the hotline "exist[s]"—its mere existence does not explain why it is being specially branded upon the targeted websites. *See Becerra*, 138 S. Ct. at 2378 (noting California's requirement "covers a curiously narrow subset of speakers"). As the court found, the hotline bulletin unmistakably conveys to healthy, informed adults that they are mentally ill, drug-addicted, and in need of help. ROA.1754-55. The factual, science-based, deeply-felt objections that result cannot be equated with the run-of-the-mill concerns of

advertisers.  Mot. at 13; ROA.1757 (finding that hotline workers are "likely not trained" to address pornography in any event).

Texas misplaces reliance on *CTIA - The Wireless Association v. City of Berkeley, California*, and *Milavetz, Gallop & Milavetz, P.A. v. United States*.  928 F.3d 832, 846 (9th Cir. 2019); 559 U.S. 229 (2010).  In *CTIA*, the disclosures were "literally true," because they afforded precise instructions for how cellphone users could stay under federal guidelines for radiation exposure.  928 F.3d at 846.  In *Milavetz*, the disclosure was "an accurate statement identifying the advertiser's legal status and the character of the assistance provided[.]"  599 U.S. at 250.  The erroneous, controversial disclosures at issue here differ categorically; the evidence demonstrates that they are "a far cry from cigarette warnings."  ROA.1758.

Although Texas suggests (Mot. at 13) that the "health warnings" are uncontroversial because "no political campaign" advances adult content, it ignores the dispositive point the record drives home:  "Just like debates involving abortion, pornography is anything but an uncontroversial topic.  [*Texas's*] *own exhibit admits this* …. The intense debate and endless sociological studies regarding pornography show that it is a deeply controversial subject ... involving contested issues of sexual freedom, religious values, and gender roles."  ROA.1755-56, 1758 (cleaned up & emphasis added).  Nor can Texas salvage the warnings by citing their attribution to the "Texas Health and Human Services" Department.  Mot. at 12.  As the district court observed, this attribution only misleads more, because "Defendant has not shown that the Texas Health and Human Services Commission has actually endorsed the message or made the relevant medical findings."

ROA.1753.  In any event, if Texas wants to speak for itself, it should be doing so through its own "public-information campaign."  *Becerra*, 138 S. Ct. at 2376.

Nor can intermediate scrutiny change the equation.  In the face of the district court's thorough rejection of intermediate scrutiny, Texas offers no explanation for how the "health warnings" could be understood as mere regulation of commercial speech.  ROA.1744-48.  Regardless, as the district court further found, the "health warnings" do not directly advance an interest in protecting minors "because only adults can access the material on websites that post this warning."[7]   ROA.1750. Moreover, the requirements "are plainly more excessive than necessary, requiring the parties to post in all caps, three times, 'TEXAS HEALTH AND HUMAN SERVICES WARNING.'"  *Id*.  In response, Texas now asserts (Mot. at 15) that "Plaintiffs have not identified a more limited restriction … that could do as well at protecting minors"—thereby ignoring content filtering, as endorsed in *Reno* and *Ashcroft*, and public-information campaigns, as endorsed in *Becerra*.  For multiple reasons, therefore, the Act should be expected to fail even intermediate scrutiny.

### C.    A Subset Of Appellees Is Likely Protected By Section 230.

Texas's arguments on Section 230 similarly fall short.  Mot. at 15-18. Contrary to Texas's foundational premise, only the platform websites are advancing Section 230 claims.  As set forth in the allegations and Appellees' declarations, the relevant platform websites host only third-party content. ROA.21, 23, 249, 265-66, 1261.  As the district court consequently found, only the

---

[7]  Although Texas now claims the Act "protect[s] *adults*," no such interest was advanced below, nor is it shown from the legislative text or record.  Mot. at 12.

platform websites that "only host[] third party content" are likely to succeed. ROA.1762, 1769 (at n.24). That leaves Texas without basis (Mot. at 17) to distinguish *Doe v. Myspace* for these websites. 528 F.3d 413 (5th Cir. 2008).

Per *MySpace*, Section 230 bars claims that seek to hold a platform liable for harms flowing from third-party content, including when harm results from a failure to implement age verification. 528 F.3d at 419. Texas does not deny that the Act seeks to protect minors from the alleged harms of adult content, even when a website creates none of it. Instead, Texas suggests that *MySpace* should be limited to its facts, but this lacks a principled basis. *See* Mot. at 17-18 ("H.B. 1181 would not impose liability for the defendant's conduct at issue in *Myspace*."). While Texas points (Mot. at 17) to the language of "monitoring, screening, and deletion," *MySpace* used that language to "demonstrate[] the fallacy of the Does' argument." 528 F.3d at 420. In fact, the *MySpace* plaintiff urged, and this Court rejected, the notion that websites should be obliged to employ "age verification" itself. *Id.* at 421–22.[8]

### III.   IRREPARABLE HARMS AND THE EQUITIES FAVOR APPELLEES

Any stay would open the door to interim enforcement and thereby inflict multiple forms of irreparable harm, including deprivations of First Amendment rights (paradigmatic irreparable harm) and unrecoverable compliance costs and

---

[8] Texas also suggests (Mot. at 18) that Appellees cannot be protected by both Section 230 and the First Amendment, but overlooks the overbreadth doctrine, empowering Appellees to assert the rights of Texas adults who visit their sites. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 386, 392–93 (1988).

burdens. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *see also* ROA.1763-67. Texas claims harm from not enforcing the Act, but it neither offers any evidence of specific harm nor has any "interest in enforcing a regulation that violates federal law." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 2023 WL 5266026, at *28 (5th Cir. Aug. 16, 2023) (cleaned up). Nor does the Act truly protect minors, given that its underinclusivity permits identical content to flow freely to minors through other channels, including search engines and social media sites.

Texas fares no better on the equities. Most of its points hinge on the merits, well analyzed by the district court and addressed above. And the equities themselves favor "maintenance of the status quo." *E.T. v. Paxton*, 19 F.4th 760, 770 (5th Cir. 2021) (cleaned up). Texas has gone without the Act since the internet's inception or popularization, and there is no compelling reason why the Act, which Texas has never been able to enforce, should suddenly take effect on an interim basis while this Court deliberates over the merits. On the other hand, instituting a stay would upend the status quo in favor of a new, constitutionally infirm regime, inflicting irreversible damage and defying *Reno*'s and *Ashcroft*'s endorsement of unstayed preliminary injunctions in parallel circumstances. ROA.1827-28. Such disruption would disserve the public interest and equities.

## CONCLUSION

For the foregoing reasons, Appellees respectfully request that this Court deny Texas's motion for a stay pending appeal.

Dated:  September 13, 2023

Respectfully submitted,

<u>s/ *Derek L. Shaffer*  </u>
 Derek L. Shaffer
 Michael T. Zeller
 Scott L. Cole
 Arian J. Koochesfahani
 Jeffrey K. Sandman

 *Counsel for Appellees*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I also certify that service will be accomplished on all registered CM/ECF users by the appellate CM/ECF system, that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13, and that the document has been scanned with CrowdStrike Falcon software and is free of viruses.

Dated: September 13, 2023        *s/     Derek L. Shaffer*
                                 Derek L. Shaffer

                                 *Counsel for Appellees*


## CERTIFICATE OF COMPLIANCE

I certify the following in compliance with Federal Rule of Appellate Procedure 32(g): The foregoing motion is in 14-point, proportionally spaced Times New Roman font and contains 5174 words, excluding the parts of the document exempted by Rule 32(f).

Dated: September 13, 2023        *s/   Derek L. Shaffer*
                                 Derek L. Shaffer

                                 *Counsel for Appellees*