No. 23-50627

# In the United States Court of Appeals for the Fifth Circuit

Free Speech Coalition, Incorporated; MG Premium, Limited; MG Freesites, Limited; WebGroup Czech Republic. a.s.; NKL Associates, s.r.o.; Sonesta Technologies, s.r.o.; Sonesta Media, s.r.o.; Yellow Production, s.r.o.; Paper Street Media, L.L.C.; Neptune Media, L.L.C.; Jane Doe; MediaME, S.R.L.; Midus Holdings, Incorporated,

*Plaintiffs-Appellees*,

*v.*

Angela Colmenero, Attorney General, State of Texas,

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO STAY PRELIMINARY INJUNCTION PENDING APPEAL

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Kyle D. Highful
Assistant Solicitor General

Coy Allen Westbrook
John Ramsey
Assistant Attorneys General
Counsel for Defendant-Appellant

## Introduction

The use of pornography by minors is a public-health crisis that is attracting the attention of experts, legislators, and parents around the country. Evidence is mounting of the many deleterious effects of online content that sexualizes violence and glorifies the subjection and abuse of women. *E.g.*, ROA.508-11. In the face of this pervasive problem, the Texas Legislature enacted common-sense measures to protect children from the vast and obscene world of internet pornography.

Plaintiffs do not argue that pornography is appropriate for minors, explain how substantial portions of their content is not obscene under controlling Supreme Court precedent, or engage with what the record shows about their sites' content, its effect on children, or how current age-verification technologies actually work. Instead, they rely chiefly on Supreme Court precedent involving dissimilar federal laws. But Plaintiffs cannot hide the fact that H.B. 1181 does not prohibit anyone from producing, transmitting, selling, viewing, or purchasing pornography. Instead, it merely seeks to ensure that those who do so are adults. This Court should extend its administrative stay of the district court's preliminary injunction through the pendency of this appeal.

## Argument

### I. The Attorney General Is Likely to Succeed on Appeal.

Plaintiffs are not likely to show that H.B. 1181 violates the First Amendment because Plaintiffs have no constitutional right to peddle obscenity to minors. Plaintiffs have not established that the ratio of their non-obscene to obscene content is high

enough to justify the extraordinary remedy of a preliminary injunction against the law's age-verification requirement. And the notice requirement passes constitutional muster as an exercise of the State's police power to regulate commercial speech to further the health and morals of its citizens. Nor have Plaintiffs shown that a threat of irreparable injury, the equitable balance, or the public interest favored an injunction. Accordingly, the Attorney General's appeal of the district court's injunction is likely to succeed.

Plaintiffs make five counterarguments, all of which fail.

*First*, Plaintiffs assert (at 8-9) that the Attorney General has failed to preserve the argument that Plaintiffs are without First Amendment protection because of the obscenity on their websites. Yet below the Attorney General argued that Plaintiffs' sites "appeal wholly to the prurient interest and have no artistic or literary value, serious or otherwise," ROA.484-85 (citing *Miller v. California*, 413 U.S. 15, 24 (1973)), and are "undeserving of First Amendment protection," ROA.485. Indeed, it is this very argument that Plaintiffs half-heartedly attempted to rebut in their reply in support of their preliminary-injunction motion by asserting that "a substantial"—albeit entirely unquantified—"portion plainly is not [obscene]." ROA.623. Plaintiffs' preservation argument is belied by their four rebuttal declarations that, at best, suggest that their websites contain *some* non-obscene materials. ROA.674-75 (asserting that one website hosts solely "soft core" content); ROA.679 (noting some non-obscene adult content, without stating a percentage); ROA.681 (same); ROA.690 (same). Although Plaintiffs may now argue that the Attorney General's obscenity argument is "newly minted and thinly conceived," Resp. 9, this point fails on the

face of the record because the Attorney General raised the argument below and Plaintiffs responded.

*Second*, Plaintiffs deny conceding that *any* of their content is obscene, *id.*, but they never actually deny the State's characterization of what minors can find on their sites or of internet pornography in general, *see, e.g.*, Mot. 3. It is no wonder that Plaintiffs would rather the Court ignore their content, which can currently be freely accessed by Texas children. If a video depicting a young woman being tied up, gagged, slapped, and penetrated by multiple men does not "portray sexual conduct in a patently offensive way," *Miller*, 413 U.S. at 24, it is difficult to imagine what would, *see* ROA.538-39 (providing a more detailed description of Plaintiff Xnxx's 304,523 "teen bondage gangbang" videos).

And the Attorney General is not cherry picking. The record reflects that "today's mainstream pornography is violent, body-punishing, and cruel," and often includes "[s]panking, gagging, slapping, hair pulling, and choking," usually against women. ROA.506. Plaintiff "Pornhub['s] videos also show scenes of rape," although the video tags are sometimes deliberately misspelled "to avoid legal action." ROA.507 (noting tags like "Un Consesual" and "Non Consesual Porn Porn videos," each of which applies to about 200,000 videos). "[S]exual practices involving coercion, deception, non-consent and criminal activity are described in mainstream online pornography in ways that position them as permissible." ROA.509. In addition to violence, minors can—and do—access depictions of "[s]exual activity between people and animals" and "[s]exual activity involving urine or feces." Chiara Sabina, Janis Wolak, & David Finkelhor, *The Nature and Dynamics of Internet*

3

*Pornography Exposure for Youth*, 11 CyberPsychology & Behavior 691, 692 (2008). Thus, this case is not about Marlon Brando movies. *Contra* ROA.1878-79. It is about "family porn," "young petite porn," "anal bondage," and other, more graphic descriptors that will not be mentioned here but are in the record. *See* ROA.538.

Plaintiffs insist that any obscenity they offer is mingled with non-obscene material, shielding them from regulation. *See* Resp. 9-10. But Plaintiffs do not claim to have segregated the obscene and non-obscene materials in such a way that Texas can more narrowly tailor its law to require age verification solely for obscene content.

*Third*, Plaintiffs misleadingly assert that the Attorney General does not "seriously disput[e] that the law is invalid under binding Supreme Court precedent," *id.* at 1, relying heavily on *Reno v. ACLU*, 521 U.S. 844 (1997), and *Ashcroft v. ACLU*, 542 U.S. 656 (2004), *e.g.*, Resp. 1, 11. But, as the Attorney General has pointed out, Mot. 8-9, the Supreme Court decided *Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011), *after* the ACLU cases. And *Brown* both reiterated "the obscenity exception to the First Amendment," 564 U.S. at 792, and noted that rational-basis review applies to regulations of material that a State deems "obscene from the perspective of a child," *id.* at 793-94. Plaintiffs cite *Brown* only once (at 13) and never discuss it.

Moreover, the Attorney General explained at length why the ACLU cases are inapposite, *see* Mot. 9-10, because they involved federal laws prohibiting certain speech, *Ashcroft*, 542 U.S. at 669-70; *Reno*, 521 U.S. at 858-60. H.B. 1181 does not prohibit *any* speech, including the transmission of pornography to minors. In addition, age verification plays an entirely different role in H.B. 1181 than it played in the

4

ACLU cases. There, age verification was an affirmative defense to criminal prosecution. *Ashcroft*, 542 U.S. at 670; *Reno*, 521 U.S. at 860-61. Here, age verification is the law's requirement, not an affirmative defense, and no criminal prosecution is authorized. Tex. Civ. Prac. & Rem. Code §§ 129B.002(a), 129B.006. In addition, H.B. 1181 is a state law, raising "particularly troublesome" federalism concerns that Plaintiffs ignore. *See NetChoice, L.L.C. v. Paxton*, 49 F.4th 439, 449 (5th Cir. 2022).

*Fourth*, Plaintiffs argue that H.B. 1181's age-verification requirement will chill expression by adults. Resp. 12. They cite the district court's order and the Third Circuit's opinion in *ACLU v. Ashcroft*, 322 F.3d 240 (3d Cir. 2003), *aff'd and remanded*, 542 U.S. 656 (2004). Resp. 12. But a more nuanced understanding of the age-verification process shows that the district court's concerns about chilling were overblown, and the Supreme Court did not adopt the part of the Third Circuit's reasoning on which Plaintiffs and the district court rely.

The district court apparently believed that H.B. 1181 requires visitors to pornographic websites to begin age verification anew with every visit. *See* ROA.1733. But H.B. 1181 provides merely that a reasonable age-verification method must require a visitor to "provide digital identification" or "comply with a commercial age verification system." Tex. Civ. Prac. & Rem. Code § 129B.003(b). Tony Allen, an expert on the "age assurance industry," ROA.402, explained in his declaration that contemporary age-verification systems are designed to be consistent with online privacy: "H.B. 1811 requires," Allen explained, and "the industry's general practice is, not to retain any personal information after an age check is completed." ROA.406. Age-verification providers "do not create new databases of personal data, nor track

5

the behavior of individuals online." ROA.406. That is, "there is no accessible ledger of adults who view adult content created by the Age Verification industry, as the plaintiffs fear, because personally identifiable data is not retained." ROA.423 (quotation marks omitted). Age-verification providers "apply the same degree of security you would expect in financial transactions," and auditors "test[] providers against international standards." ROA.406.

Critically, "[t]he verification process need only be performed once per user." ROA.407. "[T]he verification results for any individual user may be shared among Content Providers and other websites, thereby minimizing the need for multiple age verification checks of the same individual." ROA.407-08. In sum, "the technology exists now to ensure that H.B. 1181 does not threaten the principle of navigating seamlessly between many websites operated by unrelated entities." ROA.418. A system that allows a user to carry his age verification from site to site would meet H.B. 1181's requirement that sites "comply with a commercial age verification system." Tex. Civ. Prac. & Rem. Code § 129B.003(b).

Moreover, online age verification is "widely used by thousands of sellers and their consumers on a daily basis around the world, in a variety of contexts, such as alcohol and tobacco sales, gambling, gaming and, to a growing extent around the world, accessing pornography." ROA.403. And "age verification is already actively deployed by many adult content service providers." ROA.403. "These companies have applied age verification to one extent or another to their services elsewhere in the US, but also in the UK, France, Germany, Italy and in some cases, globally." ROA.404. "Many of the Plaintiff's members are already embracing age verification

technologies," ROA.430, and some Plaintiffs "already have age verification technology built into their systems," ROA.1854.

Indeed, Louisiana recently enacted a law not dissimilar from H.B. 1181 that requires certain websites that offer "material harmful to minors" to "perform reasonable age verification methods to verify the age of individuals attempting to access the material." La. Stat. § 9:2800.29(B)(1). And public sources indicate that plaintiff Pornhub, at least, is already complying with that law. According to one report, "[t]o comply with a new age-verification law in Louisiana restricting minors' access to adult internet content, visitors of the pornography website Pornhub can use their mobile ID online to prove their eligibility." Andrea Vittorio, *Digital ID Cards Spread Across US States with Range of New Uses*, Bloomberg Law (Sept. 13, 2023), https://tinyurl.com/bloombergidcards. And Fox News reports that "[s]ome adult websites, including Pornhub, began using LA Wallet — which can maintain a copy of a Louisiana resident's digital driver's license" and "tell[] a third-party verification company whether or not the user is at least 18 years old . . . ." *Louisiana lawmakers pass bill to strengthen age verification on pornography websites*, Fox News (June 5, 2023), https://tinyurl.com/foxlouisianalaw.

Similarly misplaced is Plaintiffs' (and the district court's) reliance on the Third Circuit's conclusion that an age-verification requirement "will likely deter many adults from accessing restricted content, because many Web users are simply unwilling to provide identification information in order to gain access to content." *Ashcroft*, 322 F.3d at 259. The Third Circuit reached that conclusion in *2003*, and the age-verification industry has developed significantly since then. *See* ROA.427-29. The

7

Third Circuit did not engage with the specifics of contemporary age-verification technology. And although the Supreme Court affirmed the Third Circuit's judgment, it did not mention the theory that age verification would chill adult users of pornography. *See generally Ashcroft*, 542 U.S. 656.

And *fifth*, in attacking H.B. 1181's notice requirement, Plaintiffs rely (at 15-16) on *National Institute of Family and Life Advocates v. Becerra*, which held that a law requiring crisis-pregnancy centers to post notices regarding the availability of abortion likely violated the First Amendment. 138 S. Ct. 2361, 2368, 2378 (2018). The Court distinguished *Zauderer* on two grounds. *See id.* at 2372 (citing *Zauderer v. Off. of Disciplinary Counsel*, 471 U.S. 626 (1985)). First, the required notice "in no way relates to the services that licensed clinics provide." *Id.* Second, the notice "requires these clinics to disclose information about *state*-sponsored services—including abortion, anything but an 'uncontroversial' topic." *Id.*

Contrary to Plaintiffs' argument, the Supreme Court's analysis in *Becerra* shows why this case falls comfortably within the *Zauderer* framework. H.B. 1181's notices relate directly to the services that Plaintiffs provide: Plaintiffs sell pornography, and the notices warn of potential risks of using pornography. *See* Tex. Civ. Prac. & Rem. Code § 129B.004. In addition, Plaintiffs have not shown that any controversy over the risks and benefits of pornography use, even by adults, approaches the status of abortion as a major topic of public debate. And Plaintiffs have not even argued, much less established, that there is any serious debate about whether *minors* should use pornography.

In sum, nothing in the response disproves that the Attorney General is likely to prevail in this appeal, favoring a full stay of the injunction.

## II. The Remaining Factors Favor a Stay.

The other *Nken* factors similarly favor extending the administrative stay. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). The balance of the equities and the public interest "merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. The preliminary injunction injures Texas's sovereign interests and deprives Texas children of the law's protections.

"Plaintiffs concede[d] for the purposes" of the preliminary-injunction motion that "Defendant's stated interest here is compelling." ROA.1714. And the district court noted: "It is uncontested that pornography is generally inappropriate for children, and the state may regulate a minor's access to pornography." ROA.1714. For good reason: research has linked pornography use by minors with:

- depression;
- sexual impulsivity;
- lower degrees of social integration;
- emulation of sexual strangulation and other violence;
- child sexual abuse and child pornography;
- paraphilias (*e.g.*, exhibitionism, voyeurism);
- illegal drug use;
- sexting;

9

- non-consensual sharing of intimate photos (*i.e.*, "revenge porn");
- compulsive internet use;
- dysfunctional stress responses and poor executive function;
- psychosomatic symptoms (*e.g.*, headache, irritability, trouble sleeping);
- sexism and misogyny;
- impaired self-esteem; and
- the need to view more extreme and violent pornography to reach the same sexual satisfaction.

ROA.508-11.

In their response, Plaintiffs nonetheless argue (at 20) that H.B. 1181 does not "truly protect minors, given that . . . identical content [can] flow freely to minors through other channels, including search engines and social media sites." But courts recognize that line-drawing is inherently difficult and imprecise. *See FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315-16 (1993). The State's inability to completely stop children from accessing pornography does not mean that it is completely unable to protect children by requiring the industry's major participants to verify ages and post warnings. For example, a minor who accesses Pornhub could spend his entire lifetime perusing its pornography and never run out. *See* ROA.539; Byrin Romney, *Screens, Teens, and Porn Scenes: Legislative Approaches to Protecting Youth from Exposure to Pornography*, 45 Vt. L. Rev. 43, 50 (2020). That same minor is likely to be exposed to less pornography—and, by extension, less of the harm that it causes—if he must locate it image-by-image or film-by-film.

The record, scientific studies, and common sense all point in the same direction: pornography harms children. This Court should stay the district court's injunction and allow H.B. 1181 to help prevent irreparable harm to the State's young people.

## Conclusion

The Court should extend its administrative stay of the district court's preliminary injunction through the pendency of the appeal.

Respectfully submitted.

| | |
|---|---|
| Ken Paxton<br>Attorney General of Texas | /s/ Lanora C. Pettit<br>Lanora C. Pettit<br>Principal Deputy Solicitor General |
| Brent Webster<br>First Assistant Attorney General | Lanora.Pettit@oag.texas.gov |
| | Kyle D. Highful<br>Assistant Solicitor General |
| Office of the Attorney General<br>P.O. Box 12548 (MC 059)<br>Austin, Texas 78711-2548<br>Tel.: (512) 936-1700<br>Fax: (512) 474-2697 | Coy Allen Westbrook<br>John Ramsey<br>Assistant Attorneys General |
| | Counsel for Defendant-Appellant |

## Certificate of Service

On September 20, 2023, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
Lanora C. Pettit

## Certificate of Compliance

This document complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,585 words, excluding the parts of the document exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
Lanora C. Pettit