No. 23-50627

# In the United States Court of Appeals for the Fifth Circuit

FREE SPEECH COALITION, INCORPORATED; MG PREMIUM, LIMITED; MG FREESITES, LIMITED; WEBGROUP CZECH REPUBLIC. a.s.; NKL ASSOCIATES, s.r.o.; SONESTA TECHNOLOGIES, s.r.o.; SONESTA MEDIA, s.r.o.; YELLOW PRODUCTION, s.r.o.; PAPER STREET MEDIA, L.L.C.; NEPTUNE MEDIA, L.L.C.; JANE DOE; MEDIAME, S.R.L.; MIDUS HOLDINGS, INCORPORATED,

*Plaintiffs-Appellees,*

*v.*

ANGELA COLMENERO, ATTORNEY GENERAL, STATE OF TEXAS,

*Defendant-Appellant.*

On Appeal from the United States District Court for the Western District of Texas, Austin Division

## REPLY BRIEF FOR APPELLANT

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

LANORA C. PETTIT
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

KYLE D. HIGHFUL
Assistant Solicitor General

COY ALLEN WESTBROOK
JOHN RAMSEY
Assistant Attorneys General

Counsel for Defendant-Appellant

# Table of Contents

Page

Table of Authorities ........................................................................................ ii

Introduction ................................................................................................... 1

Argument ........................................................................................................ 3

    I.   The Attorney General Is Likely to Succeed on Appeal ............................. 3

        A.  Pornographers have not plausibly alleged that H.B. 1181
             violates the First Amendment .............................................................. 3

             1.   Pornographers' obscenity is not protected by the First
                  Amendment ................................................................................... 3

             2.   Even if the First Amendment were implicated, H.B. 1811's
                  age-verification requirement does not violate it ........................... 4

                 a.   Under binding precedent, H.B. 1811 is subject to
                     (and satisfies) rational-basis review ....................................... 4

                 b.   H.B. 1181 satisfies intermediate scrutiny under the
                     secondary-effects doctrine ....................................................... 7

                 c.   H.B. 1181 is sufficiently tailored to satisfy even strict
                     scrutiny ................................................................................... 10

             3.   H.B. 1181's notice requirement does not violate the First
                  Amendment ................................................................................. 14

        B.  Section 230 does not preempt H.B. 1181 ........................................... 17

    II.  The Remaining Preliminary-Injunction Factors Favor Defendant ........... 20

        A.  Pornographers did not show irreparable harm .................................. 20

        B.  The balance of equities favors the Attorney General ......................... 23

Conclusion ..................................................................................................... 24

Certificate of Service ..................................................................................... 25

Certificate of Compliance .............................................................................. 25

# Table of Authorities

Page(s)

**Cases:**

*10 Ring Precision, Inc. v. Jones*,
722 F.3d 711 (5th Cir. 2013) ................................................................ 8

*303 Creative LLC v. Elenis*,
143 S. Ct. 2298 (2023) ................................................................... 3, 4

*Agency for Int'l Dev. v. All. for Open Society Int'l, Inc.*,
140 S. Ct. 2082 (2020) .................................................................21, 22

*Am. for Prosperity Found. v. Bonta*,
141 S. Ct. 2373 (2021) ................................................................... 5

*Am. Academy of Implant Dentistry v. Parker*,
860 F.3d 300 (5th Cir. 2017) ...................................................... 16, 17

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) ................................................................. 6, 12-13

*Bethel Sch. Dist. No. 403 v. Fraser*,
478 U.S. 675 (1986) ....................................................................4, 21

*Bolger v. Youngs Drug Prods. Corp.*,
463 U.S. 60 (1983) .........................................................................16

*Brown v. Entm't Merchants Ass'n*,
564 U.S. 786 (2011) ........................................................................ 6

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*,
447 U.S. 563 (1980) ........................................................................16

*City of Cincinnati v. Discovery Network, Inc.*,
507 U.S. 410 (1993) ........................................................................16

*City of Renton v. Playtime Theatres, Inc.*,
475 U.S. 41 (1986) ...................................................................... 7, 9

*Commonwealth v. Am. Booksellers Ass'n*,
372 S.E.2d 618 (Va. 1988) ...............................................................11

*CTIA–The Wireless Ass'n v. City of Berkeley*,
928 F.3d 832 (9th Cir. 2019) ...........................................................15

*Discotheque, Inc. v. Augusta-Richmond Cnty.*,
No. 21-13218, 2022 WL 5077263 (11th Cir. Oct. 5, 2022)..................... 9

*Doe v. MySpace, Inc.*,
528 F.3d 413 (5th Cir. 2008) .....................................................18-20

*Doe v. WebGroup Czech Republic, a.s.*,
No. 2:21-cv-02428-VAP-SKx, 2022 WL 982248 (C.D. Cal. Jan. 13,
2022) ................................................................................................. 22

*Erznoznik v. City of Jacksonville*,
422 U.S. 205 (1975) .......................................................................... 5

*In re Facebook, Inc.*,
625 S.W.3d 80 (Tex. 2021), *cert denied sub nom.*,
*Doe v. Facebook, Inc.*,
142 S. Ct. 1087 (2022) .....................................................................19

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
521 F.3d 1157 (9th Cir. 2008) .................................................. 17, 18

*Ginsberg v. State of New York*,
390 U.S. 629 (1968) ..................................................................... 4-7

*Henderson v. Source for Pub. Data, L.P.*,
53 F.4th 110 (4th Cir. 2022) ...........................................................19

*Hill v. Colorado*,
530 U.S. 703 (2000) ........................................................................11

*Hodel v. Indiana*,
452 U.S. 314 (1981) .......................................................................... 5

*Interstate Cir., Inc. v. City of Dallas*,
390 U.S. 676 (1968) ..................................................................... 4-5

*Johanns v. Livestock Mktg. Ass'n*,
544 U.S. 550 (2005) ........................................................................15

*Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*,
141 S. Ct. 13 (2020) ................................................................. 19-20

*Miller v. California*,
413 U.S. 15 (1973) ...................................................................... 2-4

*Nat'l Inst. of Fam. & Life Advocates. v. Becerra*,
138 S. Ct. 2361 (2018) ................................................................... 14

*NetChoice, LLC v. Paxton*,
49 F.4th 439 (5th Cir. 2022) ..................................................... 11, 23

*Pub. Citizen Inc. v. La. Att'y Disciplinary Bd.*,
632 F.3d 212 (5th Cir. 2011) ..........................................................17

*Reed v. Town of Gilbert, Arizona*,
576 U.S. 155 (2015) .......................................................................... 9

*Reno v. ACLU,*
    521 U.S. 844 (1997) ...........................................................................6, 12

*Sable Commc'ns of Cal., Inc. v. FCC,*
    492 U.S. 115 (1989) ...........................................................................5, 10

*Spradlin v. Jim Walter Homes, Inc.,*
    34 S.W.3d 578 (Tex. 2000) ....................................................................11

*St. Joseph Abbey v. Castille,*
    712 F.3d 215 (5th Cir. 2013) .................................................................. 8

*Tex. Veterans of Foreign Wars v. Tex. Lottery Comm'n,*
    760 F.3d 427 (5th Cir. 2014) ................................................................ 10

*Thunder Studios, Inc. v. Kazal,*
    13 F.4th 736 (9th Cir. 2021) .............................................................21, 22

*Turtle Island Foods, S.P.C. v. Strain,*
    65 F.4th 211 (5th Cir. 2023) ............................................................... 1-2

*Va. v. Am. Booksellers Ass'n, Inc.,*
    484 U.S. 383 (1998) ........................................................................10-11

*Veasey v. Abbott,*
    870 F.3d 387 (5th Cir. 2017) ............................................................... 23

*Wine & Spirits Retailers, Inc. v. Rhode Island,*
    418 F.3d 36 (1st Cir. 2005) .................................................................... 2

*Winter v. NRDC,*
    555 U.S. 7 (2008) ........................................................................... 20, 23

*Young v. Am. Mini Theatres, Inc.,*
    427 U.S. 50 (1976)................................................................................. 2

*Zauderer v. Off. of Disciplinary Counsel,*
    471 U.S. 626 (1985) ........................................................................14-16

*Zeran v. Am. Online, Inc.,*
    129 F.3d 327 (4th Cir. 1997) ................................................................19

**Constitutional Provisions and Statutes:**

U.S. Const. amend. I..........................................................................*passim*

47 U.S.C. § 230(c)(1) ..................................................................... 2, 17-20

Tex. Civ. Prac. & Rem. Code:
    § 129B.002 ............................................................................................ 4
    § 129B.002(a)................................................................................. 10, 11
    § 129B.002(b) ....................................................................................... 6

iv

Tex. Civ. Prac. & Rem. Code (ctd.):

    § 129B.004 ................................................................................ 14

    § 129B.004(1) ............................................................................15

    § 129B.006(a) ......................................................................18-19

    § 129B.006(b)(2) ........................................................................ 6

Tex. Gov't Code § 311.011(a) ......................................................11

Tex. Local Gov't Code § 243.0031(c)(2) ...................................... 6

Tex. Penal Code § 43.28 .............................................................. 6

**Other Authorities:**

Chiara Sabina, et al., *The Nature and Dynamics of Internet Pornography Exposure for Youth,* 11 CyberPsychology & Behavior 691 (2008)...................... 23

FDA, *Cigarette Labeling and Health Warning Requirements,* https://www.fda.gov/tobacco-products/labeling-and-warning-statements-tobacco-products/cigarette-labeling-and-health-warning-requirements ........................................................15

Hearing on H.B. 1181 Before the House Comm. on Judiciary & Civ. Juris., 88th Leg., R.S. (Apr. 5, 2023) (statement of Rep. Shaheen), https://tlchouse.granicus.com/MediaPlayer.php?view_id=78&clip_id=24390 ............................................................................ 8

H.J. of Tex., 88th Leg., R.S. 5374 (2023) ................................... 1

Marc Novicoff, *A Simple Law Is Doing the Impossible. It's Making the Online Porn Industry Retreat*, Politico (Aug. 8, 2023), https://www.politico.com/news/magazine/2023/08/08/age-law-online-porn-00110148 ................................................................................ 1, 15

Mary Graw Leary, *The Indecency and Injustice of Section 230 of the Communications Decency Act*, 41 Harv. J.L. & Pub. Pol'y 553 (2018) .................17

S.J. of Tex., 88th Leg., R.S. 2212 (2023) ................................... 1

### Introduction

Across the country, state legislators of all political stripes are reaching the same conclusion: that "Pornography is creating a public health crisis and having a corroding influence on minors." *See* Marc Novicoff, *A Simple Law Is Doing the Impossible. It's Making the Online Porn Industry Retreat*, Politico (Aug. 8, 2023), https://www.politico.com/news/magazine/2023/08/08/age-law-online-porn-00110148 (quoting a Louisiana bill). And "[n]early identical bills have passed" in seven States with "lopsided margins," if not entirely "unanimously," to combat this growing crisis. *Id.* H.B. 1181 is one such law.[1] Aimed primarily at ameliorating the effect of pornography on minors, and passed with near unanimity, H.J. of Tex., 88th Leg., R.S. 5374 (2023); S.J. of Tex., 88th Leg., R.S. 2212 (2023), H.B. 1181 takes the common-sense approach of requiring Pornographers to take reasonable steps to check the age of their customers as well as to warn the customers of potential risks associated with their product.

Pornographers seek a judicial veto of that duly enacted law—and, by extension, others like it. Pornographers' opening brief, however, underscores that they have not carried the "heavy burden" they face in a facial challenge—"showing that either no set of circumstances exists under which the Act would be valid, or that the statute lacks any plainly legitimate sweep." *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th

---

[1] Unless otherwise specified, defined terms are given the meaning assigned in Brief for Appellant. Moreover, given the highly compressed timeline requiring simultaneous briefing, Appellant focuses on Appellees' main points. Failure to respond to any particular statement in Appellees' briefs should not be deemed a concession.

211, 219 (5th Cir. 2023) (cleaned up). Because Pornographers cannot seriously dispute that much of their graphic material is obscene (particularly as to minors), H.B. 1181 does not implicate the First Amendment. It "has been categorically settled" for half a century that the freedom of speech does not protect the right to peddle obscenity. *Miller v. California*, 413 U.S. 15, 23 (1973). Nor does Section 230 of the Communications Decency Act ("CDA"), which—as its name implies—was designed to *deter* the proliferation of the very type of materials that lie at the heart of Pornographers' business model. For these reasons, among others, Pornographers are unlikely to succeed on the merits of their underlying claims.

Moreover, Pornographers have not shown they will be irreparably harmed—let alone that the equities favored the sweeping injunction entered by the district court. This is an unusual First Amendment case because H.B. 1181 does not prevent anyone from performing in, producing, publishing, or promoting pornography. And it does not stop adults from perusing or possessing it. Instead, Pornographers' claims to harm (at 56-57) are that H.B. 1181 may deter certain customers and will make peddling their wares more expensive. But ordinary economics give rise to a presumption—which Pornographers have done nothing to rebut—that such costs are likely to be passed on to Pornographers' customers. Even if they are not, "the First Amendment does not guarantee that speech will be profitable to the speaker or desirable to its intended audience." *Wine & Spirits Retailers, Inc. v. Rhode Island*, 418 F.3d 36, 47-48 (1st Cir. 2005) (footnote omitted) (citing *inter alia Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 78, (1976) (Powell, J., concurring)). And any incidental costs on Pornographers are more than offset by the social benefit obtained by

preventing minors from accessing material that, as discussed at length in Appellants' Brief (at 2-5), is all too often violent, degrading, and psychologically harmful.

## ARGUMENT

## I. The Attorney General Is Likely to Succeed on Appeal.

### A. Pornographers have not plausibly alleged that H.B. 1181 violates the First Amendment.

#### 1. Pornographers' obscenity is not protected by the First Amendment.

Pornographers are unlikely to succeed on the merits because for decades, the Supreme Court has held that the First Amendment does nothing to preclude States from *criminalizing* materials that, "taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Miller*, 413 U.S. at 24. Even a cursory review of the record confirms that Pornographers' websites contain obscenity, some of which is too graphic to describe in a public filing consistent with the expectations of decorum in this Court. *E.g.*, ROA.538.

Pornographers insist that not *all* the material on their sites is obscene and point, for example, to the fact some websites include blog posts on "what to expect following a hysterectomy." Appellees' Br. 25. This fails for at least two reasons. *First*, as Pornographers' own authority demonstrates, *see* Appellees' Br. 3, 45, expressive websites are typically treated as whole "creations" for First Amendment purposes—not divided up into individual graphics or pieces of artwork. *See 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2308 (2023). Under this rule, Pornographers'

"creations," *id.*, "taken as a whole," would be deemed obscene, *Miller*, 413 U.S. at 24, because H.B. 1181 applies only to commercial entities whose websites contain a substantial percentage of obscene material, Tex. Civ. Prac. & Rem. Code § 129B.002. *Second*, the age-verification requirement applies at the website's landing page, Appellant's Br. 6, meaning that it is Pornographers' choice whether to include both obscene and non-obscene material behind that same requirement. To accept their argument that the First Amendment protects *all* material on their sites because they have chosen to comingle protected and nonprotected content would be like saying a strip club cannot check IDs because some of the beverages they sell are non-alcoholic and some of the people inside are clothed. The Attorney General is aware of no case holding anything of the sort.

### 2. Even if the First Amendment were implicated, H.B. 1811's age-verification requirement does not violate it.

#### a. Under binding precedent, H.B. 1811 is subject to (and satisfies) rational-basis review.

Even if Pornographers' websites fall into the ambit of protection of the First Amendment, H.B. 1181 would be subject only to rational-basis review under *Ginsberg v. State of New York*, 390 U.S. 629 (1968), and its progeny. Although rarely invoked since its issuance, the Supreme Court has repeatedly cited *Ginsberg* for the proposition that there are "limitations on the otherwise absolute interest of the speaker in reaching an unlimited audience where the speech is sexually explicit and the audience may include children." *Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 684 (1986); *see also, e.g.*, *Interstate Cir., Inc. v. City of Dallas*, 390 U.S. 676, 690 (1968). As

a result, it "is well settled that a State or municipality can adopt more stringent controls on communicative materials available to youths than on those available to adults." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212 (1975).

H.B. 1181 easily surpasses this low bar. It is beyond dispute that Texas has not just a legitimate but a "compelling interest in protecting the physical and psychological well-being of minors," which "extends to shielding minors from the influence of literature that is not obscene by adult standards." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). And Pornographers do not seriously dispute that "reasonable connection between the regulatory means"—verifying that visitors to pornographic websites are at least 18—"and the asserted ends"—limiting access by those under 18 to pornographic websites. *Hodel v. Indiana*, 452 U.S. 314, 324 (1981) (reciting the rational-basis test).

Rather than assert that H.B. 1181 fails *Ginsberg*, Pornographers try to dismiss it in three ways. None has merit. *First*, Pornographers argue (at 31-32) that *Ginsberg* is inapposite because internet regulation is different from in-person regulation. In-person age verification, they insist (at 31), poses less risk to the *customer's* privacy because it "poses no appreciable risk of hacks or leaks, of being tracked or monitored, or of being forever linked to sensitive, controversial content." Assuming that this is a First Amendment problem at all, it is far from clear that it is one the Pornographers can raise given that it seems to implicate the rights of the *customer* to access information—not the Pornographers to provide it. *Cf. Ams. for Prosperity Found. v. Bonta*, 141 S. Ct. 2373, 2388 (2021) (discussing the right to remain anonymous in a digital environment). But even if the possibility of unmasking could make their porn-hungry

customer base shy away from their sites, H.B. 1181 is unlikely to lead to such an outcome because it explicitly prohibits retaining identifying information. Tex. Civ. Prac. & Rem. Code § 129B.002(b), .006(b)(2).[2] The record also reflects companies generally do not retain information anyway, unless legally required to do so. *See* ROA.1837.

*Second*, Pornographers argue that *Ginsberg* does not apply because it is akin to "forc[ing] movie theaters . . . to screen everyone at the main entrance for their 18+ identification, regardless of what movie they wanted to see." Appellees' Br. 31. To the contrary, as noted above, H.B. 1181's age-verification is akin to verifying the age of everyone who enters an *adult* movie theater or strip club, which is required by Texas law. Tex. Local Gov't Code § 243.0031(c)(2); Tex. Penal Code § 43.28.

*Third*, Pornographers try to dismiss *Ginsberg* (at 16, 30-31) as effectively abrogated by *Reno v. ACLU*, 521 U.S. 844 (1997), and *Ashcroft v. ACLU*, 542 U.S. 656 (2004). But *Reno* merely distinguished the CDA from the statute in *Ginsberg*. 521 U.S. at 864-67. And as the Attorney General discussed at length (at 13-14), *Ashcroft*'s discussion of age verification does not reflect a constitutional holding that it can never be used. If there were any doubt, it should be resolved by *Brown v. Entertainment Merchants Association*, where the Supreme Court split on many things, but not a single Justice suggested *Ginsberg* was no longer good law. 564 U.S. 786, 793 (2011) (majority op.); *id.* at 807 (Alito, J., concurring); *id.* at 838 (Thomas, J., dissenting); *id.* at 842 (Breyer, J., dissenting). And, under *Ginsberg*, H.B. 1181 is constitutional.

---

[2] Users can also select websites with age-verification methods that suit their comfort level—even ones "that do not require them to disclose personal and sensitive information." ROA.428.

### b. H.B. 1181 satisfies intermediate scrutiny under the secondary-effects doctrine.

Even if *Ginsberg* did not apply, because Pornographers are the modern-day, digital descendants of the adult movie theater or strip club, and H.B. 1181 is aimed at regulating the secondary effects, it would *still* be subject to rational-basis review under the principles established in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54-55 (1986). In *Renton*, a municipality zoned adult theaters away from locations where children might be present including residential areas, churches, and schools. *Id.* at 43. Although attacked as a seemingly content-based restriction on expression, the Supreme Court upheld the law under the secondary-effects doctrine, *id.* at 52, because the regulation was "*justified* without reference to the content of the regulated speech," *id.* at 48. As a result, it was treated effectively as a time, place, and manner restriction, and only required a substantial governmental interest and did not limit alternative avenues of communication. *Id.* at 29-50.

Here, although the internet is not directly analogous to a physical place that can be zoned, H.B. 1181 serves an equivalent function: as appellants have explained in detail elsewhere, Stay Reply 9-10; Appellant's Br. 4-5, early exposure to pornography has been associated with numerous deleterious effects ranging from increased risk for teenage smoking, ROA.510, to the tendency to emulate dangerous sexual proclivities, ROA.509. At the same time, H.B. 1181 leaves adults free to communicate after verifying their ages. As a result, H.B. 1181 can be justified without reference to the content of the "speech" in question, and there is a sufficient governmental interest to justify limiting minors' access to this content.

Pornographers raise three primary responses, none of which has merit. *First*, Pornographers repeatedly implore this Court to infer from the legislative record that the Texas Legislature was motivated by a desire to harm the pornography industry rather than address the effects it causes on the larger population. Appellees' Br. 12, 35, 38, 43-44. For example, Pornographers cite a Senate Committee Hearing to show the Senate never considered *their* preferred alternative. *Id.* at 43. Tellingly, however, Pornographers failure to cite any case from this Court requiring a state legislature to make detailed factual records or consider every possible alternative policy to survive strict scrutiny. *Id.* at 43-44. Indeed, the *single* Fifth Circuit case they cite is not even about strict scrutiny but post hoc *rationales* and rational basis. *See St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013). And imposing such a requirement on a state legislature here would be odd—to say the least—given that this Court typically does not even impose a requirement to consider every possible alternative on federal agencies subject to judicial review, *see 10 Ring Precision, Inc. v. Jones*, 722 F.3d 711, 724 (5th Cir. 2013) (noting that an agency "need not consider every alternative proposed").

Even if the Court were inclined to try to delve into the motivations of individual legislators for what alternatives they considered, Pornographers' myopic focus on the Senate Committee Hearing ignores other statements reflecting that H.B. 1181's author did, in fact, consider alternatives proposed by others. *See, e.g.*, Hearing on H.B. 1181 Before the House Comm. on Judiciary & Civ. Juris., 88th Leg., R.S., 44:35 (Apr. 5, 2023) (statement of Rep. Shaheen), https://tlchouse.granicus.com/MediaPlayer.php?view_id=78&clip_id=24390. And it entirely disregards an amicus

brief submitted to the district court, in which two legislators detail potential problems with Pornographers' alternatives. ROA.1116. For instance, blocking and filtering could discriminate against those without the means to implement the parental controls and potentially involve technical knowledge. ROA.1116. And a child may escape parental blocking and filtering by going to a friend's house. ROA.1116. Therefore, H.B. 1181's legislative history does not refute that H.B. 1181 was aimed at the harmful secondary effects of pornography.

*Second*, Pornographers suggest (at 36) that because the internet is not a place, applying the secondary-effect doctrine to their websites would distort the doctrine and allow the government "to recharacterize any regulation of disfavored speech and its effects on listeners as a regulation targeting 'secondary effects,' thereby insulating content- and viewpoint-based regulation from strict scrutiny." Not true. As noted above (at 7), online pornography is the direct descendant of the adult theater in *Renton*. Extending *Renton* to this case is thus no more problematic than extending copyright laws that would have prevented moviegoers from recording films at theatres to users of Netflix.

*Third*, Pornographers cite (at 37) *Reed v. Town of Gilbert, Arizona*, 576 U.S. 155 (2015), for the proposition that content-based laws are now always subject to strict scrutiny. But *Reed* did not address or abrogate the secondary-effects doctrine. *Discotheque, Inc. v. Augusta-Richmond Cnty.*, No. 21-13218, 2022 WL 5077263, at *6 (11th Cir. Oct. 5, 2022) (per curiam). The record reflects that under this doctrine, H.B. 1181 is again easily constitutional. If anything, the secondary effects of these websites are *worse* than the adult theaters at issue in *Renton* because their ubiquity has led to

(among other things) the creation of more extreme and violent pornography, revenge porn, addiction and social anxiety, sexual abuse, and later-in-life pedophilia, ROA.508-11. Thus, if municipalities could act to limit the secondary effects of adult movie theatres in *Renton*, the State can do so here too.

### c.    H.B. 1181 is sufficiently tailored to satisfy even strict scrutiny.

Even if strict scrutiny applies, H.B. 1181's age-verification requirement would survive. Again, that Texas has a "compelling" governmental interest in protecting minors from Pornographers' content is beyond cavil, *Sable*, 492 U.S. at 126, and Pornographers do not seriously dispute that requiring them to verify their customers' ages "actually advances" that interest. *Tex. Veterans of Foreign Wars v. Tex. Lottery Comm'n*, 760 F.3d 427, 440 (5th Cir. 2014). Instead, Pornographers assert (at 21, 30) that the provision is vague as well as both over- and under-inclusive. None of these reasons renders H.B. 1181 facially unconstitutional.

**i.**    Pornographers start by questioning how to interpret the phrase, "[a] commercial entity that knowingly and intentionally publishes or distributes material on an Internet website, including a social media platform, more than *one-third of which* is sexual material harmful to minors, shall use reasonable age verification methods." Tex. Civ. Prac. & Rem. Code § 129B.002(a) (emphasis added). Specifically, Pornographers assert (at 30) that "one-third" could modify "website" or "material." To the extent there is such an ambiguity, however, it is *not* the type of law so vague that it leaves "people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Instead, it is the type of question that can be easily resolved through certification. *Compare Va. v.*

*Am. Booksellers Ass'n, Inc.*, 484 U.S. 383 (1988), *with Commonwealth v. Am. Booksellers Ass'n*, 372 S.E.2d 618 (Va. 1988).[3]

Moreover, the Texas Supreme Court would likely conclude there is no such ambiguity. Texas law presumes that the Legislature understands and applies ordinary rules of English grammar, Tex. Gov't Code § 311.011(a), including the rule of the last antecedent, *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000). In this instance, "of which is sexual material harmful to minors," Tex. Civ. Prac. & Rem. Code § 129B.002(a), is a "qualifying phrase," *Spradlin*, 34 S.W.3d at 580, that modifies "words and phrases immediately preceding it,"—*i.e.*, "one third." That entire phrase then modifies "website." In any event, any distinction is hardly relevant: given that Pornographers make their money selling pornography, they will meet the one-third trigger regardless of how the Court measures the denominator.

**ii.** H.B. 1181 is also neither impermissibly under- nor over-inclusive. It is not underinclusive for putatively failing to regulate search engines or social-media sites. *Contra* Appellees' Br. 34. Social-media sites are not expressly excluded. Tex. Civ. Prac. & Rem. Code § 129B.002(a). Rather than the obscenity that is Pornographers' stock and trade, however, the majority of the content on most social-media pages *is* protected (often political) speech. *Compare supra* Part I.A.1, *with NetChoice, LLC v. Paxton*, 49 F.4th 439, 469 (5th Cir. 2022). Indeed, excluding some websites cannot

---

[3] That the U.S. Supreme Court considered certification a proper remedy for any vagueness in the phrase "harmful to juveniles" also demonstrates that "with respect to minors" is not unconstitutionally vague. *Am. Booksellers*, 484 U.S. at 386; *Am. Booksellers II*, 372 S.E.2d at 170-71.

make H.B. 1181 underinclusive because if Texas *did* undertake to regulate the "entire universe of cyberspace," H.B. 1181 would be overbroad under *Reno*, 521 U.S. at 868.

Pornographers also suggest that H.B. 1181 is overinclusive because it "burdens a huge number of adults." Appellees' Br. 16. But the only burden is verifying one's age, which the record reflects need only be done once, ROA.418, and is no more burdensome than that which is already imposed on adults who attend strip clubs or adult theaters, *supra* p. 6, or buy tobacco or alcohol online, Appellants Br. 24.

Pornographers insist that H.B. 1181 *must* be unconstitutional because "Texas's own evidence 'suggests that parental-led content-filtering is a more effective alternative.'" Appellees' Br. 39-40; ROA.527. That misstates the record. For example, the Attorney General presented evidence "that a majority of adolescents (90+% of boys and 60+% of girls) are exposed to pornography at some point in their teenage years, with 11 being the average age of first exposure." ROA.506. And a study from Oxford University found that "internet filtering tools are ineffective and in most cases, were an insignificant factor in whether young people had seen explicit sexual content." ROA.427. There are many reasons that this could be. For the technology to be effective, parents and guardians must be aware of the technology, understand how to use it, choose to implement and update it. ROA.1842-43, *see also* ROA.527. Moreover, even if parents do everything right, that would not be effective because there is no way for parents to make sure their children cannot access the internet outside the home, ROA.1732, or that the adults controlling those access points are similarly informed and diligent. But for present purposes, a less-restrictive alternative is only constitutionally relevant if it is *effective. Ashcroft*, 542 U.S. at 666. Blocking

and filtering has been available since *Ashcroft*, *id.* at 666-70, and it has proved anything but.

**iii.** The only actual alternative to the status quo proposed by Pornographers is that "the government could use Internet service providers, or ISPs, to block adult content until the adults opt-out of the block," which they maintain "prevents the repeated submission of identifying information to a third party, and operating at a higher level, would not need to reveal the specific websites visited," and "[i]f implemented on a device-level, sexual information would be allowed for adults' devices but not for children when connected to home internet." ROA.1732. It would also grant ISPs tremendous power over what people see online and raise many of the privacy concerns that Pornographers (incorrectly) claim are created by H.B. 1181 because *ISPs* would have to track who opted out of the porn block much longer than H.B. 1181 permits. *Supra* p. 6.

It is also somewhat dubious whether this would be any more effective than the content filter. After all, even Pornographers admit that it only works "for children when connected to home internet." ROA.1732. One does not have to be a parent to know that children access the internet places other than at home—and that they are particularly likely to do so if they intend to watch "family porn" and "teen bondage." ROA.538. Because a restriction that can be evaded simply by logging onto the internet at a friend's house is not a constitutionally relevant alternative, Pornographers cannot show a likelihood of success on their challenge to H.B. 1181's age-verification requirement by pointing to its existence.

### 3. H.B. 1181's notice requirement does not violate the First Amendment.

Pornographers are also unlikely to show that the Texas Legislature violated the First Amendment by requiring Pornographers to include four "purely factual" and legally "uncontroversial" notices. *Zauderer v. Off. of Disciplinary Counsel*, 471 U.S. 626, 651 (1985). The Pornographers' ipse dixit statements and speculation about an ulterior motive behind H.B. 1181 to make pornographers pariahs cannot avoid that conclusion.

Pornographers argue (at 47-49) that *Zauderer* is inapplicable because (1) the abuse hotline conveys no factual information because it suggests users of pornography are mentally ill, (2) the warnings are false or scientifically contested, and (3) the notices are "unduly burdensome," "deceptive," and "ultimately irrational." Each of the Pornographers' arguments fails.

*First*, H.B. 1181 requires disclosure of factual information about potential risks associated with pornography use and truthfully notes the existence of a national telephone hotline. Tex. Civ. Prac. & Rem. Code § 129B.004. This is truthful and uncontroversial as compulsive sexual behavior ("CSB"), which is associated with frequent pornography consumption, is related to substance abuse disorders because "[c]ommon neurotransmitter systems may contribute to CSB and substance us[e] disorders, and recent neuroimaging studies highlight similarities relating to craving and attentional biases." ROA.432.

For the reasons discussed in Appellants Brief (at 28-29), *National Institute of Family & Life Advocates. v. Becerra*, 138 S. Ct. 2361 (2018), is not to the contrary. The

statute in that case required a pro-life entity to advertise state-funded abortion and thereby take a side contrary to its own view on one of the most hotly contested political controversies of our time. There is no such controversy here: seven States have now adopted nearly "identical" laws either unanimously or very nearly so. Novicoff, *supra*.

*Second*, *Zauderer* allows Texas to require Pornographers to inform purchasers about what the State believes about the products they are about to buy. *CTIA–The Wireless Ass'n v. City of Berkeley*, 928 F.3d 832, 848 (9th Cir. 2019). Given that each message starts with the words "TEXAS HEALTH AND HUMAN SERVICES WARNING," Tex. Civ. Prac. & Rem. Code § 129B.004(1), there can be little doubt for the reader that the message is on behalf of the government. Thus, even if pornography is a contentious topic, no one is asked to "take sides in a heated political controversy." *See CTIA*, 928 F.3d at 848; *Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 564 (2005).

*Third*, the font size does not make the notices unduly burdensome. For example, warnings on tobacco products "must comprise at least the top 50 percent of the . . . two largest sides or surfaces of the package." FDA, *Cigarette Labeling and Health Warning Requirements*, https://www.fda.gov/tobacco-products/labeling-and-warning-statements-tobacco-products/cigarette-labeling-and-health-warning-requirements. Here the warnings need not take up a percentage of a webpage, they just must be in at least size 14 font. Next, substance abuse and pornography addiction are similar, ROA.432, thus hotline staff are well qualified to aid callers. And because

Pornographers acknowledge that not all minors will be stopped by age verification, ROA.63, the notices serve as a last line of defense to deter minors from pornography.

**c.** Even absent *Zauderer*, H.B. 1181 still passes constitutional muster because the notices "directly advance" the "substantial interest," of protecting children from pornography. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 563, 654 (1980). Pornographers recognize (at 50) the advertisement notices are likely constitutional. H.B. 1181 is also constitutional as applied to landing pages for the same reasons.

Pornographers argue that Texas attempts to regulate non-commercial speech, because landing pages are more than "mere proposals to transact." Appellee's Br. 50. Commercial speech includes "speech which does no more than propose a commercial transaction," *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983) (cleaned up), but case law reflects that the line is not nearly as clean as Pornographers suggest, *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 421 (1993). Here, Pornographic websites make money from advertisements and subscriptions based upon the content displayed on their websites. ROA.249-50. Each of the 671,000 views of the "teen bondage gangbang" is a commercial transaction where the user receives a service (the video), and the seller (XNXX) receives money in the form of advertisement revenue. The free video may also be an advertisement to upsell users to premium or subscription-based accounts like XNXX Gold. ROA.538-39.

Next, Pornographers' argument that Texas failed to substantively explain how the notices are justified is belied by *American Academy of Implant Dentistry v. Parker*, 860 F.3d 300 (5th Cir. 2017). Under *Parker*, Texas may "satisfy its burden with

'empirical data, *studies*, and anecdotal evidence,' or 'history, consensus, and *simple common sense.*'" *Id.* at 309 (emphases added) (quoting *Pub. Citizen Inc. v. La. Att'y Disciplinary Bd.*, 632 F.3d 212, 220 (5th Cir. 2011)). Studies demonstrate the negative impact of childhood exposure to pornography, such as hypersexualization, emulating sexual strangulation, and a host of other mental disorders. ROA370-71. And simple common sense dictates that notice requirements, like those used for alcohol and tobacco, assist in deterring persons from using harmful products. *See Parker*, 860 F.3d at 306. Far from disproving this intuition, Pornographers *admit* the warnings are likely to be effective—and thus constitutionally justified. ROA.81.

## B. Section 230 does not preempt H.B. 1181.

Similarly flawed are Pornographers' efforts to show that Section 230—which was enacted to incentivize website operators to implement good-faith screening to protect children from pornography and similar content, *see* Mary Graw Leary, *The Indecency and Injustice of Section 230 of the Communications Decency Act*, 41 Harv. J.L. & Pub. Pol'y 553, 559 (2018)—preempts H.B. 1181. "In passing section 230, Congress sought to spare interactive computer services th[e] grim choice" of leaving indecent content on their websites or facing liability for material *not* removed "by allowing them to perform some editing on user-generated content without thereby becoming liable." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) (en banc); 47 U.S.C. § 230(c)(1). Pornographers ask this Court to turn Section 230 from a shield to allow good-faith removal of indecent material into a sword to attack a law that requires Pornographers to do what they refuse to do voluntarily: limit access to indecent material on their sites. But

Pornographers have not shown that they *solely* host third-party content. Because "Congress sought to immunize the *removal* of user-generated content, not the *creation* of content," *Roommates.Com*, 521 F.3d at 1163, they have not shown Section 230 preempts H.B. 1181. Appellant's Br. 30-39.

Tellingly, Pornographers make no effort to explain how Section 230's text or context protect their right to make *more* objectionable content available to minors. Instead, they devote just about three pages of their 61-page brief to Section 230, Appellees' Br. 52-55, pinning all their hopes on *Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008). That reliance is misplaced for at least two reasons.

*First*, *MySpace* is distinguishable because the "underlying basis" of the plaintiff's negligence claim was that, "through postings on MySpace," the plaintiff was contacted by the man who later assaulted her. *Id.* at 419. This Court held that Section 230 barred the plaintiff's claims because, at their root, they sought to hold MySpace liable for harm caused by third-party content. *Id.* at 420. The Court mentioned age verification in passing, but primarily because the Court found it significant that the plaintiff had "lied about her age" to create a profile on MySpace, which already employed "a computer program designed to search for clues that underage members have lied about their age." *Id.* at 416; *see id.* at 420. In other words, MySpace was not liable when the plaintiff circumvented its automated age-verification program.

In contrast to Doe's claim based on negligence, H.B. 1181 does not require the Attorney General to prove third-party harm or the defendant's negligence in preventing it, but rather that a pornographic website operator "knowingly" refused to implement common-sense measures to protect minors from pornography. *See* Tex.

Civ. Prac. & Rem. Code § 129B.006(a). If a website operator negligently fails to comply with the statute, it will not be liable under H.B. 1181. Nor would the site be liable if a minor circumvents age verification, ignores the health warnings, and is subsequently harmed by third-party content or resulting offline conduct. Because the result would be the same under H.B. 1181 as it was in *MySpace*—no liability for the website—*MySpace* does not establish that Section 230 preempts Texas's law.

Moreover, although *MySpace* is binding on the panel, it should be read far more narrowly than Pornographers urge (at 53). As a growing consensus of courts are now recognizing, it is "highly unlikely that Congress, by prohibiting treatment of internet companies 'as . . . publisher[s],' sought to immunize those companies from *all* liability for the way they run their platforms, even liability for their own knowing or intentional acts as opposed to those of their users." *In re Facebook, Inc.*, 625 S.W.3d 80, 98 (Tex. 2021) (quoting 47 U.S.C. § 230(c)(1)), *cert. denied sub nom. Doe v. Facebook, Inc.*, 142 S. Ct. 1087 (2022). Indeed, even the Fourth Circuit, on whose landmark decision in *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997), this Court relied, *MySpace*, 528 F.3d at 418-20, has recently emphasized that Section 230 "is not a license to do whatever one wants online." *Henderson v. Source for Pub. Data, L.P.*, 53 F.4th 110, 117 (4th Cir. 2022). Instead, subsection (c)(1) "extends only to bar certain claims imposing liability for specific information that another party provided." *Id.* Until the Supreme Court has found "an appropriate case" in which to definitively construe Section 230, *see Malwarebytes, Inc. v. Enigma Software Grp. USA, LLC*, 141 S. Ct. 13, 14 (2020) (Thomas, J., statement respecting the denial of certiorari), this Court should not expand Section 230's reach to prevent States from

enforcing laws that impose liability not for third-party content, but for a website's knowing refusal to verify that their pornography users are adults.

*Second*, even if *MySpace* controls and Section 230 would prevent the enforcement of H.B. 1181 against sites that host only third-party content, Pornographers have not shown that they are such sites. A subset assert (at 55) that they host only third-party content. But, as the Attorney General explained in his opening brief (at 35-36), their record cites do not support that assertion. They certainly do not support a sweeping injunction invalidating H.B. 1181, because Pornographers' own allegations and declarations show that they have constructed a tangled web of related entities, some of which undisputedly produce content and upload it onto other Pornographers' sites. *See* ROA.20-23, 539. They are therefore not entitled to a preliminary injunction on Section 230 grounds.

## II. The Remaining Preliminary-Injunction Factors Favor Defendant.

### A. Pornographers did not show irreparable harm.

Pornographers are also not entitled to injunctive relief because they have not shown any of the remaining factors laid out in *Winter v. NRDC*, 555 U.S. 7, 20 (2008). Assuming their own account of their operations is accurate, the Foreign Websites do not have First Amendment rights that can give rise to irreparable injury. Appellant's Br. 40-44. The Domestic Websites provide no evidence that H.B. 1181 will reduce adult viewership and, even if they did, the Constitution does not guarantee them an unlimited right to any audience, especially "where the speech is sexually explicit and the audience may include children." *Fraser*, 478 U.S. at 684; *see*

Appellant's Br. 44-46. Jane Doe cannot show any harm; because she has not alleged that she operates a pornographic site, H.B. 1181 does not apply to her. Appellant's Br. 46-47. And because FSC's members have not shown irreparable harm, neither has FSC. *Id.* at 47-48. None of Pornographers' three contrary arguments changes this analysis.

*First*, Pornographers argue "that foreign entities naturally have standing to defend their expression in Texas against sanction by Texas," citing *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736 (9th Cir. 2021). Appellees' Br. 20-21. But as the Attorney General has explained (at 44), *Thunder Studios* involved speech that occurred in the United States, was specifically targeted *to* U.S. residents *about* specific U.S. residents, and was accompanied by physical actions in the U.S. 13 F.4th at 739-40. Unlike the Foreign Websites, the defendants in *Thunder Studios* did not solely post non-targeted content on the "decentralized, global medium of communication that links people, institutions, corporations, and governments around the world." ROA.28 (Pornographers' definition of the internet). In addition to sending emails, the *Thunder Studios* defendants "hired protestors to picket and distribute flyers" and "hired vans emblazoned with their message to drive around Los Angeles." 13 F.4th at 740.

Because defendants are instead "foreign organizations operating abroad," this case is controlled by *Agency for International Development v. Alliance for Open Society International, Inc.*, 140 S. Ct. 2082 (2020) ("*AOSI II*"); *accord Thunder Studios*, 13 F.4th at 744 (distinguishing *AOSI II* on this ground). That is, according to their own representations, the Foreign Websites have no U.S. operations. *See* ROA.20-23; *see also Doe v. WebGroup Czech Republic, a.s.*, No. 2:21-cv-02428-VAP-SKx, 2022 WL

982248, at *5 (C.D. Cal. Jan. 13, 2022) (making similar arguments).[4] They have not alleged that they target speech about U.S. residents to U.S. residents and direct off-line actions as the *Thunder Studios* defendants did. As a result, "it is long settled as a matter of American constitutional law" that they, as "foreign citizens outside U.S. territory[,] do not possess rights under the U. S. Constitution." *AOSI II*, 140 S. Ct. at 2086. Although "foreign citizens *in the United States* may enjoy certain constitutional rights," the Supreme Court "has not allowed foreign citizens outside the United States . . . to assert rights under the U. S. Constitution," *id.*

*Second*, Pornographers argue (at 57) that they face irreparable harm because Texas's sovereign immunity will prevent them from recovering compliance costs. But the Attorney General presented evidence that age verification costs only a few cents per visitor. ROA.559-60. And Pornographers have not shown that they cannot recover compliance costs from their customers—whether subscribers (if they offer paid services) or advertisers (if they offer free content). Given Pornographers' vast viewership, *see* ROA.539 (showing that Pornhub had 42 *billion* visits in 2019), and the addictive nature of their product, *see* ROA.512, demand for pornography is presumably inelastic enough to remain stable despite the slight marginal expense.

*Third*, Pornographers argue that H.B. 1181's notice requirement will damage their "goodwill." Appellees' Br. 57. But Pornographers have not shown that

---

[4] The Attorney General expects that a future H.B. 1181 enforcement action will show that some Foreign Websites do direct their activities toward Texas and purposefully avail themselves of the privileges of doing so. But they have failed to meet their distinct burden to show that they operate in the U.S. or are entitled to constitutional protection.

displaying the warnings would harm their reputations, given that a broad spectrum of adults agrees that protecting children from pornography is a noble goal. *See* Appellant's Br. 46. And, as just explained, Pornographers likely enjoy inelastic demand, and they have not shown that any slight decrease in goodwill would lead to decreased viewership. *See id.* at 45.

## B.  The balance of equities favors the Attorney General.

Finally, the district court improperly failed to heed the Supreme Court's caution that "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. Here the public consequences extend well beyond the sovereignty interests and federalism concerns that are implicated by every federal injunction. *See NetChoice*, 49 F.4th at 449; *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). At stake is Texas's ability to protect its children. Pornographers insist that Texas can wait, given that the State has "gone without the Act since the advent and popularization of the Internet." Appellees' Br. 58. This ignores that every child is worthy of protection, and that the delay is precisely what led to an explosion of millions of hours of increasingly violent, misogynistic, and obscene pornography, being accessed by millions of children, with devasting effects on their individual minds, bodies, and sexual lives. *See* ROA.506-11, 538-39; Chiara Sabina, et al., *The Nature and Dynamics of Internet Pornography Exposure for Youth*, 11 CyberPsychology & Behavior 691, 691-93 (2008). That governments across the nation and the world may have failed to protect the children of yesterday does not deprive Texas of a compelling interest in protecting the children of today from similar harm.

## Conclusion

The Court should reverse and remand.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/ Lanora C. Pettit
Lanora C. Pettit
Principal Deputy Solicitor General
Lanora.Pettit@oag.texas.gov

Kyle D. Highful
Assistant Solicitor General

Coy Allen Westbrook
John Ramsey
Assistant Attorneys General

Counsel for Defendant-Appellant

## CERTIFICATE OF SERVICE

On September 27, 2023, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Lanora C. Pettit
Lanora C. Pettit

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,372 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Lanora C. Pettit
Lanora C. Pettit