# United States Court of Appeals

*for the*

# Fifth Circuit

---

Case No. 23-50627

FREE SPEECH COALITION, INCORPORATED; MG PREMIUM, LIMITED; MG FREESITES, LIMITED; WEBGROUP CZECH REPUBLIC, A.S.; NKL ASSOCIATES, S.R.O.; SONESTA TECHNOLOGIES, S.R.O.; SONESTA MEDIA, S.R.O.; YELLOW PRODUCTION, S.R.O.; PAPER STREET MEDIA, L.L.C.; NEPTUNE MEDIA, L.L.C.; JANE DOE; MEDIAME, S.R.L.; MIDUS HOLDINGS, INCORPORATED,

*Plaintiffs-Appellees,*

v.

KEN PAXTON, Attorney General, State of Texas,

*Defendant-Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION IN CASE NO. 1:23-CV-00917-DAE, HONORABLE DAVID ALAN EZRA, SENIOR DISTRICT JUDGE

---

### APPELLEES' MOTION TO STAY ISSUANCE OF MANDATE (UNOPPOSED) AND VACATE STAY PENDING APPEAL (OPPOSED)

---

SCOTT L. COLE
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
300 West Sixth Street, Suite 2010
Austin, Texas 78701
(737) 667-6100

JEFFREY K. SANDMAN
WEBB DANIEL FRIEDLANDER LLP
5208 Magazine Street, Suite 364
New Orleans, Louisiana 70115
(978) 886-0639

DEREK L. SHAFFER
CHRISTOPHER G. MICHEL
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
1300 I Street NW, 9th Floor
Washington, DC 20005
(202) 538-8000

MICHAEL T. ZELLER
ARIAN J. KOOCHESFAHANI
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000

*Counsel for Plaintiffs-Appellees*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have a financial interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Plaintiff-Appellees: Free Speech Coalition, Inc., MG Premium Ltd, MG Freesites Ltd, WebGroup Czech Republic, a.s., NKL Associates, s.r.o., Sonesta Technologies, s.r.o., Sonesta Media, s.r.o., Yellow Production s.r.o., Paper Street Media, LLC, Neptune Media, LLC, Jane Doe, MediaME SRL, Midus Holdings, Inc.

2. Counsel for Plaintiff-Appellees: Derek L. Shaffer, Scott L. Cole, Michael T. Zeller, Christopher G. Michel, Arian J. Koochesfahani, Thomas D. Nolan, Nicoletta Malogioglio, Taylor Comerford, Daniel Mummolo, and Emily Couture of Quinn Emanuel Urquhart & Sullivan, LLP; Jeffrey K. Sandman of Webb Daniel Friedlander, LLP.

The undersigned counsel further certifies that:

- Free Speech Coalition, Inc. has no parent corporation;

- MG Premium Ltd is a wholly-owned subsidiary of MG CY Holdings Ltd, which is a subsidiary, through affiliates,[1] of 1000498476 Ontario Inc.

- MG Freesites Ltd is a wholly-owned subsidiary of MG CY Holdings Ltd, which is a subsidiary, through the same affiliates identified in note 1, of 1000498476 Ontario Inc.

- WebGroup Czech Republic, a.s. has no parent corporation;

- NKL Associates s.r.o. has no parent corporation;

---

[1] Licensing IP International S.a.r.l.; MindGeek S.a.r.l.; ECP One Limited; ECP Three Limited; ECP Four Limited; ECP Alpha Holding Ltd; ECP Alpha LP; SIE Holdings Limited; ECP Capital Partners Ltd; and FMSM Holdings, Inc. (OBCA).

- Sonesta Technologies, s.r.o. is a wholly-owned subsidiary of United Communication Hldg II, a.s.;

- Sonesta Media, s.r.o. is a wholly-owned subsidiary of United Communication Hldg II, a.s.;

- Yellow Production, s.r.o. has no parent corporation;

- Paper Street Media, LLC is a wholly-owned subsidiary of Paper Street Holdings, Inc.;

- Neptune Media, LLC is a wholly-owned subsidiary of Paper Street Holdings, Inc.;

- MediaME SRL has no parent corporation;

- Midus Holdings, Inc., has no parent corporation; and

- No publicly held corporation owns 10 percent or more of any of the above-listed entities' stock.


Dated: March 25, 2024             *s/ Derek L. Shaffer*
                                  Derek L. Shaffer

                                  *Counsel for Appellees*

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PERSONS ...................................................... I

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 5

LEGAL STANDARD ....................................................................................... 8

ARGUMENT ................................................................................................. 9

I.     THIS COURT SHOULD GRANT THE UNOPPOSED MOTION TO
       STAY THE MANDATE ................................................................. 10

       A.     Appellees' Forthcoming Certiorari Petition Will Present A
              Substantial Question ......................................................... 10

              1.     This Court's Decision Conflicts With Supreme Court
                     Precedent .................................................................. 11

              2.     This Court's Decision Creates A Circuit Split ......................... 14

              3.     This Court's Decision Presents An Exceptionally
                     Important Question ................................................... 16

       B.     Good Cause Exists Because Appellees Will Otherwise
              Continue To Suffer Irreparable Harm ............................... 17

II.    CONSISTENT WITH STAYING THE MANDATE, THIS COURT
       SHOULD VACATE ANY REMAINING STAY PENDING APPEAL ...... 18

       A.     Staying The Mandate Would Not Restore The Stay Pending
              Appeal ................................................................................ 19

       B.     A Stay Pending Appeal Is Unwarranted Regardless .......................... 20

CONCLUSION ............................................................................................ 23

CERTIFICATE OF SERVICE .......................................................................... 24

CERTIFICATE OF COMPLIANCE ................................................................. 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*ACLU v. Ashcroft*,
   322 F.3d 240 (3d Cir. 2003)................................................................15

*ACLU v. Johnson*,
   194 F.3d 1149 (10th Cir. 1999).........................................................15

*Am. Booksellers Found. v. Dean*,
   342 F.3d 96 (2d Cir. 2003).........................................................11, 14

*Ashcroft v. ACLU*,
   542 U.S. 656 (2004).......................1, 2, 3, 5, 6, 9, 12, 13, 14, 15, 16, 18, 21, 22

*Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders
   of Atl. Cnty.*,
   112 F.3d 652 (3d Cir. 1997)...............................................................19

*Baldwin v. Maggio*,
   715 F.2d 152 (5th Cir. 1983)...........................................4, 8, 11, 17

*Barefoot v. Estelle*,
   463 U.S. 880 (1983)..............................................................................8

*Butler v. Michigan*,
   352 U.S. 380 (1957)............................................................................13

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
   657 F.3d 936 (9th Cir. 2011)............................................................20

*Cyberspace Commc'ns, Inc. v. Engler*,
   238 F.3d 420 (6th Cir. 2000)............................................................22

*In re Deepwater Horizon*,
   928 F.3d 394 (5th Cir. 2019)............................................................19

*Elrod v. Burns*,
   427 U.S. 347 (1976)............................................................................18

*Erznoznik v. City of Jacksonville*,
  422 U.S. 205 (1975)................................................................14

*Free Speech Coal., Inc. v. Paxton*,
  — F.4th — (5th Cir. 2024).......................................................2

*Ginsberg v. New York*.
  390 U.S. 629 (1968)...............................7, 8, 11, 12, 13, 14, 15, 22

*Med. Ctr. Pharmacy v. Mukasey*,
  536 F.3d 383 (5th Cir. 2008).................................................20

*Miller v. California*,
  413 U.S. 15 (1973)................................................................5

*Minn. Voters All. v. Mansky*,
  138 S. Ct. 1876 (2018).........................................................16

*Nat'l Advert. Co. v. Town of Babylon*,
  900 F.2d 551 (2d Cir. 1990)..................................................20

*Netchoice LLC v. Paxton*,
  49 F.4th 439 (5th Cir. 2022), *cert. granted*, 144 S. Ct. 477 (2023)..................16

*Nken v. Holder*,
  556 U.S. 418 (2009)..................................................4, 9, 10, 19

*Planned Parenthood League of Massachusetts v. Bellotti*,
  641 F.2d 1006 (1st Cir. 1981) ..............................................20

*Plaquemines Par. v. Chevron U.S., Inc.*,
  84 F.4th 362 (5th Cir. 2023)..............................................9, 20

*PSINet, Inc. v. Chapman*,
  362 F.3d 227 (4th Cir. 2004)................................................15

*Reno v. ACLU*,
  521 U.S. 844 (1997)............................1, 2, 6, 9, 12, 13, 16, 18, 22

*Roth v. United States*,
  354 U.S. 476 (1957)............................................................12

*Sable Commc'ns of Cal. v. FCC*,
    492 U.S. 115 (1989)..........................................................................12

*Thalheimer v. City of San Diego*,
    645 F.3d 1109 (9th Cir. 2011)........................................................21

*United States v. Playboy Ent. Grp., Inc.*,
    529 U.S. 803 (2000)..................................................................12, 14

*United States v. Texas*,
    2024 WL 1163923 (U.S. Mar. 19, 2024)............................3, 4, 8, 20

## Statutes and Rules

Fed. R. App. P. 41(d) ............................................... 1, 2, 3, 4, 8, 10, 19

Fed. R. App. P. 41(d)(1).......................................................................8

Rule 28.2.1 ............................................................................................ i

Rule 8 ...................................................................................................1

S. Ct. R. 10(a) ........................................................................11, 15, 16

S. Ct. R. 10(c) .....................................................................................14

Tex. Civ. Prac. & Rem. Code § 129B.001(6) ........................................5

Tex. Civ. Prac. & Rem. Code § 129B.002(a) ........................................5

Tex. Civ. Prac. & Rem. Code § 129B.004................................................6

Tex. Civ. Prac. & Rem. Code § 129B.005(b) ........................................5

## Other Authorities

https://www.cnn.com/2024/03/15/tech/vpn-searches-spike-texas-
    pornhub/index.html.......................................................................17

https://www.texasattorneygeneral.gov/news/releases/attorney-general-
    ken-paxton-sues-two-more-pornography-companies-violating-
    texas-age-verification-law.............................................................17

# INTRODUCTION

Appellees respectfully move under Federal Rule of Appellate Procedure 41(d) to stay the Court's mandate pending the filing and disposition of a petition for a writ of certiorari, and, in tandem, Appellees respectfully move to vacate the Court's stay pending appeal to the extent it persists under Rule 8. Notably, the interval between now and the Supreme Court's disposition of Appellees' forthcoming petition for certiorari (which has good prospects of being granted, as explained below) should be short. Appellees have committed to expedited filing of their petition so that—if Texas responds promptly, consistent with the expedited schedule that governed here—the Justices can vote before the summer recess. Unfortunately, Texas has indicated that it will not agree to that schedule, while also refusing to stand still with respect to enforcement actions pending the cert decision. Thus, the requested relief is necessary and appropriate to prevent Texas from gaming the clock and laying waste to First Amendment interests deemed paramount by the Supreme Court in *Ashcroft* and *Reno*. The requested relief also would terminate stays that have never been backed by reasoned explanation and now fly in the face of uniform agreement among all participating judges that the challenged state law is likely unconstitutional at least in significant part.

Texas does not oppose staying the mandate, and this is a paradigmatic case for it. The district court preliminarily enjoined Texas H.B. 1181 ("the Act") on First

Amendment grounds, holding that the Act's compelled "health-warning" and age-verification requirements were both likely unconstitutional under binding Supreme Court precedent.  On Texas's appeal, this Court entered an administrative stay of the preliminary injunction that remained in place for almost two months, followed by a one-line order granting a stay pending appeal that continued for nearly three-and-a-half more.  The Court then unanimously *affirmed* the preliminary injunction barring enforcement of the health warnings.  And although the Court vacated the preliminary injunction as to the age-verification requirement over Judge Higginbotham's forceful dissent, the majority acknowledged that the Supreme Court had affirmed a "very similar" preliminary injunction in *Ashcroft v. ACLU*, 542 U.S. 656 (2004).  Having affirmed the preliminary injunction in part, the Court unanimously vacated the stay pending appeal.

There are strong and obvious grounds for granting Appellees' unopposed request to stay the mandate.  Appellees' forthcoming certiorari petition will "present a substantial question," Fed. R. App. P. 41(d), seeking review of a divided decision that the majority recognized was in apparent tension with Supreme Court precedent, *Free Speech Coal., Inc. v. Paxton*, — F.4th — (5th Cir. 2024), slip op. ("Op.") 13-14; that departs from the view of every other circuit to address an analogous question, *see infra* at 14-15; and that arises in an area and posture that have led the Court to grant review in similar cases, *see generally Reno v. ACLU*, 521 U.S. 844

(1997); *Ashcroft v. ACLU*, 542 U.S. 656 (2004). Appellees also satisfy Rule 41(d)'s "good cause" requirement, given that every judge who has reviewed the Act has deemed it unconstitutional at least in part, Texas has never argued that the unconstitutional health warnings are severable from the Act, and subjecting Appellees to punitive enforcement actions will continue to cause incontestable chill and irreparable harm.

Staying this Court's mandate should restore the preliminary injunction under review for a limited period while the Supreme Court determines whether to grant certiorari. But Texas has taken a contrary position, suggesting that a stay of the mandate would leave intact the now-vacated stay of the preliminary injunction pending appeal. That makes little sense on its own terms. The purpose of the stay pending appeal was to pause the order below while this Court resolved the appeal on its merits, which has now happened. Leaving the stay intact would be particularly anomalous because the Court never provided any reasoning for it, *cf. United States v. Texas*, 2024 WL 1163923, at *1-3 (U.S. Mar. 19, 2024) (Barrett, J., joined by Kavanaugh, J., concurring); because this Court ultimately *upheld* part of the preliminary injunction by a *unanimous* vote; and because Texas has never argued— nor has this Court ever concluded—that the health-warnings provisions are severable from the rest of the Act, a necessary premise for narrowing the injunction's scope.

To eliminate doubt, however, Appellees respectfully move for a separate order vacating the stay pending appeal if the Court stays the mandate. Vacating the stay goes hand in hand with staying the mandate. Just as Appellees will "present a substantial question" in their forthcoming certiorari petition, Fed. R. App. P. 41(d)—i.e., one that creates "a reasonable probability" of Supreme Court review and "a significant possibility" of reversal, *Baldwin v. Maggio*, 715 F.2d 152, 153 (5th Cir. 1983)—so too do Appellees make the required "strong showing that [they are] likely to succeed on the merits." *Nken v. Holder*, 556 U.S. 418, 434 (2009); *see Texas*, 2024 WL 1163923, at *1 (Barrett, J., concurring) (noting the *Nken* factors apply both to granting and vacating a stay). And just as Appellees show "good cause" for withholding the mandate, Fed. R. App. P. 41(d)—i.e., that "irreparable harm" will likely result "if [this Court's] decision is not stayed," *Baldwin*, 715 F.2d at 153—they likewise satisfy the equitable factors governing the lifting of a stay, *see Nken*, 556 U.S. at 434.

At bottom, Appellees have a powerful constitutional argument that flows directly from Supreme Court precedent, has been accepted in part by every judge who has reviewed this case, and has been accepted in full by half of the judges who have reviewed the case. Appellees also demonstrate quintessential irreparable harm, subject as they are to enforcement actions, which Texas has already commenced, violating their First Amendment rights. Moreover, the key Supreme Court precedent

expressly notes that unstayed preliminary injunctions are appropriate in this context. *Ashcroft*, 542 U.S. at 673.  Against this backdrop, all Appellees respectfully ask is that the preliminary injunction be restored for a brief time (which should total three months, if Texas cooperates) to allow the Supreme Court to review Appellees' forthcoming petition.  Texas nevertheless opposes vacatur of the stay pending appeal, while offering every indication that it wants to prolong the certiorari process so as to leverage a supposedly persisting stay pending appeal that has never been backed by reasoned explanation and is now out of step with all available reasoning.[2]

## BACKGROUND

**1.**     Enacted in 2023, the Act applies to "commercial entities" that "operate[] an Internet website."  Tex. Civ. Prac. & Rem. Code § 129B.002(a).  It requires websites containing "more than one-third . . . sexual material harmful to minors" to "verify that an individual attempting to access the material is 18 years of age or older."  § 129B.002(a).  It defines "material harmful to minors" as material obscene for minors under *Miller v. California*, 413 U.S. 15 (1973).  § 129B.001(6).

The Act expressly exempts search engines and social media sites *de facto*. § 129B.005(b); ROA.1715-16.  It also requires websites to display a multifold

---

[2]  When Appellees conveyed to Texas their preparedness to file their certiorari petition on an expedited timeframe that—if matched by a reciprocal commitment— would enable the Supreme Court to decide the petition before the summer recess, Texas refused, reserving its rights to cross-petition, waive response, and avail itself of all time potentially available at the certiorari stage.

"TEXAS HEALTH AND HUMAN SERVICES WARNING," proclaiming, e.g., "[p]ornography . . . is proven to harm human brain development," plus a bulletin for "U.S. SUBSTANCE ABUSE AND MENTAL HEALTH SERVICES" and "REFERRAL TO LOCAL TREATMENT FACILITIES." § 129B.004.

2.    Appellees—the adult entertainment industry's trade association, certain websites hosting adult content, and certain content creators—sued Texas's Attorney General to preliminarily enjoin enforcement of the Act on First Amendment grounds. ROA.16-46. In an 81-page decision granting that relief, the district court identified the Act's likely infirmities. ROA.1709-58. The court determined that age verification over the Internet chills adult access to protected speech and warrants strict scrutiny, applying *Reno* and *Ashcroft*. ROA.1709-12, 1721-32. The court then found that the Act failed strict scrutiny. ROA.1715-17, 1732-42. As for the "health warnings," the court categorized them as government-compelled speech, necessitating strict scrutiny, which they failed. ROA.1742-49.

3.    Texas appealed and sought a stay from this Court, moving for a stay **within two days** of filing its notice of appeal and replying to Appellees' opposition **within a week**. ROA.1771-72; Dkt. #12, #47, #68. On September 19, 2023, this Court issued an order stating: "The district court's preliminary injunction is ADMINISTRATIVELY STAYED, and the appeal is EXPEDITED to the next available oral argument panel." Dkt. #66. Texas and Appellees then filed

simultaneous opening briefs **within five days** of the expedited briefing notice and simultaneous reply briefs **two days later**.  Dkt. #69, #74, #76, #92-93.  (At no time did Appellees oppose or resist any aspect of this extraordinary expedition.)  This Court heard argument on October 4, 2023.  Dkt. #117.  On November 14, 2023, the Court issued an order stating:  "IT IS ORDERED that appellant's opposed motion to stay the district court's injunction pending appeal is GRANTED.  The administrative stay issued by the administrative panel on September 19, 2023, is VACATED" and "an expedited opinion [will issue] as soon as reasonably possible."  Dkt. #125.  Texas has since begun enforcing the Act in state court.  *See* Dkt. #131.

On March 7, 2024, this Court issued its opinion.  Dkt. #137.  The Court unanimously upheld the preliminary injunction as to the "health warnings," applying intermediate scrutiny on the theory that commercial speech is at issue.  Op. 39.  But a 2-1 majority of the Court vacated the preliminary injunction as to age verification.  *Id.* at 23.  The majority relied on *Ginsberg v. New York*, which rejected under rational-basis review a challenge on behalf of minors to a law banning the sale of sexual magazines to minors.  390 U.S. 629 (1968).  Applying *Ginsberg*, the majority held that "regulation of the distribution *to minors* of speech obscene *for minors* is subject only to rational-basis review," which it found the provisions likely satisfy.  Op. 9 (alteration in original).

Judge Higginbotham vigorously dissented. He explained that the Act "must face strict scrutiny review because it limits adults' access to protected speech using a content-based distinction." Op. 42. He added that "*Ginsberg's* justification for rational basis review—that minors have more limited First Amendment rights than adults—has no purchase" here because the Act burdens adults. *Id.* at 50. He would affirm the preliminary injunction in full. *Id.* at 62-78.

Alongside its partial vacatur of the preliminary injunction, the Court referred to "Texas's motion to stay the district court's injunction pending appeal" and stated: "We now vacate that stay and rule on the merits[.]" Op. 2.

## LEGAL STANDARD

This Court may "stay the mandate pending the filing of a petition for a writ of certiorari in the Supreme Court" when "the petition would present a substantial question and [] there is good cause for a stay." Fed. R. App. P. 41(d)(1). That standard is met when there is "a reasonable probability that four members of the [Supreme] Court would consider the underlying issue" worthy of certiorari, there is "a significant possibility of reversal of the lower court's decision," and "irreparable harm" will likely result "if that decision is not stayed." *Baldwin*, 715 F.2d at 153 (citing *Barefoot v. Estelle*, 463 U.S. 880, 895 (1983)).

This Court may vacate a stay pending appeal by applying the same factors that govern entry of a stay. *Texas*, 2024 WL 1163923, at *1 (Barrett, J., concurring); *see*

*Plaquemines Par. v. Chevron U.S., Inc.*, 84 F.4th 362, 373, 378 (5th Cir. 2023).
Those factors are "(1) whether the stay applicant has made a strong showing that he
is likely to succeed on the merits; (2) whether the applicant will be irreparably
injured absent a stay; (3) whether issuance of the stay will substantially injure the
other parties interested in the proceeding; and (4) where the public interest lies."
*Nken*, 556 U.S. at 434. That inquiry turns on "the circumstances" of the case. *Id.*
(cleaned up).

## ARGUMENT

Texas does not oppose a stay of the mandate, and this Court should grant one.
In seeking the Supreme Court's review of this Court's divided decision vacating the
preliminary injunction as to the age-verification provisions, Appellees will have
substantial arguments that the panel majority departed from Supreme Court
precedents affirming preliminary injunctions of closely analogous laws. *Reno*, 521
U.S. at 884; *Ashcroft*, 542 U.S. at 673. Appellees also will point to a square circuit
conflict, with all other circuits that have considered similar laws applying strict
scrutiny. *See infra* at 14-15. And Appellees have good cause for a stay, as they face
ongoing enforcement actions threatening their First Amendment rights—even
though this Court unanimously held that the "health-warning" provisions of the Act
are likely unconstitutional, and even though Texas has never argued those provisions
can be severed.

While it does not oppose a stay of the mandate, Texas takes the striking position that this Court should maintain its unexplained stay pending appeal. But this Court unanimously vacated the previous stay, and there is no principled basis to reinstate it. Indeed, it would make little sense for this Court to stay the mandate—acknowledging that Appellees have both good cause and substantial prospects of Supreme Court review and reversal—but to conclude simultaneously that the *Nken* factors justify a continued stay pending appeal. At a minimum, this Court should not restore the stay of the preliminary injunction as to the "health-warning" requirement because the Court has unanimously held that Texas is *not likely* to succeed there.

## I.   THIS COURT SHOULD GRANT THE UNOPPOSED MOTION TO STAY THE MANDATE

Appellees satisfy Rule 41(d)'s test for a stay of the mandate pending disposition of their petition for certiorari—which presents a substantial question—and they show good cause. Texas does not oppose that relief.

### A.   Appellees' Forthcoming Certiorari Petition Will Present A Substantial Question

Appellees' forthcoming certiorari petition will present a substantial question under Rule 41(d): It will advance the view, backed by the dissent, that the Court's decision conflicts with Supreme Court precedent, creates a circuit split, and

implicates a question of exceptional importance that the Court has shown willingness to review. S. Ct. R. 10(a) & (c); *see Baldwin*, 715 F.2d at 154.

Specifically, Appellees' petition will present the substantial question whether legislatures may curtail the First Amendment rights of adults without satisfying heightened scrutiny whenever they regulate the distribution to minors of material obscene for minors. *See* Op. 7. The Supreme Court has for decades applied strict scrutiny to such laws. Op. 43 n.10 (Higginbotham, J., dissenting) (collecting citations). The panel majority nevertheless applied rational-basis review based on a novel reading of *Ginsberg v. New York*, 390 U.S. 629 (1968). But, as the Second Circuit, among others, has explained when construing *Ginsberg*, "restrictions aimed at minors may not limit non-obscene expression among adults" without overcoming strict scrutiny. *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 101 (2d Cir. 2003) (citing *Ginsberg*). Here, the district court specifically found that online age verification profoundly burdens adults. ROA.1721-42. Thus, the case falls squarely within the Supreme Court precedents applying strict scrutiny to government restrictions impinging upon adults' consumption of protected expression, including in the Internet context.

### 1.   *This Court's Decision Conflicts With Supreme Court Precedent*

Over the past 75 years, the Supreme Court has developed a stable framework for reviewing laws that restrict sexually explicit content. Obscenity is unprotected,

*see Roth v. United States,* 354 U.S. 476, 485 (1957), while "[s]exual expression which is indecent but not obscene is protected," *Sable Commc'ns of Cal. v. FCC*, 492 U.S. 115, 126 (1989).  First Amendment protection applies differently to minors than to adults.  In *Ginsberg*, the Supreme Court rejected a challenge asserting the right of minors to purchase "'girlie' picture magazines" deemed inappropriate for youth even though the content of the publications was "not obscene to adults." 390 U.S. at 634.  The Court explained that the state could rationally limit the rights of *minors* in that way, while stressing that the law did not burden *adults*.  *Id.* at 634-639.

In harmony with *Ginsberg*, the Supreme Court has consistently applied strict scrutiny to laws restricting minors' access to sexual content when those restrictions also burden adults—including laws regulating the distribution of material obscene for minors over the Internet unless age verification is used.  *Reno*, 521 U.S. at 881-82, 868; *Ashcroft*, 542 U.S. at 665.  In this context, "[t]he distinction between laws burdening and laws banning speech is but a matter of degree."  *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 812 (2000).  Strict scrutiny applies all the same, with the heaviness of the burden going to whether strict scrutiny is satisfied.  *Id*.

The Act's age-verification requirement draws strict scrutiny under these precedents, and the district court proceeded accordingly.  It explained the profound

burdens that online age-verification places on adults, including because "individuals know the information is at risk," "data breaches have become more high-profile, and data related to users' sexual activity is more likely to be targeted." ROA.1721-42. And, relying on *Reno* and *Ashcroft*, it held that the age-verification provisions are likely unconstitutional. ROA.1709-14, 1726-42, 1769-70.

The panel applied rational-basis review instead, based on a novel interpretation of *Ginsberg*, holding that, under *Ginsberg*, any law restricting minors' access to sexual content is reviewed only for rationality. But that holding overreads *Ginsberg* and elevates it over a string of intervening Supreme Court precedents that govern this case. The issue presented in *Ginsberg* was whether "the scope of the constitutional freedom of expression … cannot be made to depend upon whether the citizen is an adult or a minor." 390 U.S. at 636. The *Ginsberg* Court rejected *that* proposition, which would have broadened the rights of minors, while recognizing the analysis would change if the law also burdened adults. *Id.* at 634. *Ginsberg* expressly distinguished the Court's earlier decision in *Butler v. Michigan*, which had struck down a state law banning the sale to both minors and adults of sexual content deemed harmful for minors. *Id.* (citing *Butler*, 352 U.S. 380 (1957)).

Notably, the panel majority recognized that its interpretation of *Ginsberg* introduces tension with the line of cases culminating in *Ashcroft*, which it considered "very similar" to this case and "seemingly contradictory." Op. 13-14. Ultimately,

the majority distinguished *Ashcroft* on the grounds that the Supreme Court effectively made a mistake, characterizing the Supreme Court's failure to apply rational-basis review as a "startling omission[]" purportedly induced by oversight and the failure of the law's defender (the United States, represented by Solicitor General Ted Olson) to argue for it.  Op. 15.  But the straightforward reading of the cases is that *Ginsberg* stands for the important but modest rule that a state can rationally "regulate minors in ways it could not regulate adults," *id.* at 49, while strict scrutiny applies when a law burdens the rights of adults.  *Playboy*, 529 U.S. at 814.  Whether the majority correctly interpreted *Ginsberg* relative to *Ashcroft* presents a paradigmatic question for Supreme Court review.  S. Ct. R. 10(c).[3]

### 2.   *This Court's Decision Creates A Circuit Split*

The panel majority's reasoning also conflicts with decisions of other circuits.  In *American Booksellers Foundation v. Dean*, the Second Circuit considered a law prohibiting online distribution to minors of sexual material "harmful to minors."  342 F.3d at 100 (cleaned up).  Applying *Ginsberg*, the court observed that a state may "impose restrictions on a minor's access to material considered harmful to minors even if the material is not obscene with respect to adults."  *Id.* at 101 (citing

---

[3]  The panel majority also cited *Erznoznik v. City of Jacksonville*, but *Erznoznik* similarly addressed (and upheld) a challenge solely with respect to minors, the government having conceded it could not "prohibit the display of films containing nudity to adults."  422 U.S. 205, 213 (1975).

*Ginsberg*, 390 U.S. at 636-37).  But the court also applied subsequent precedent, explaining that "restrictions aimed at minors may not limit non-obscene expression among adults" because state legislatures may not restrict "[s]peech within the rights of adults . . . in an attempt to shield children from it."  *Id*. (citation omitted).  The court accordingly applied strict scrutiny.  *Id*. at 102.

The Third, Fourth, and Tenth Circuits have followed suit.  The Third Circuit applied strict scrutiny in evaluating the same statute later reviewed by the Supreme Court in *Ashcroft*.  *ACLU v. Ashcroft*, 322 F.3d 240, 243, 251 (3d Cir. 2003), *aff'd*, *Ashcroft*, 542 U.S. at 661.  The Fourth Circuit similarly applied strict scrutiny to a state law criminalizing online distribution of material harmful to minors.  *PSINet, Inc. v. Chapman*, 362 F.3d 227, 233, 229, 234 (4th Cir. 2004) (citing *Ginsberg*, 390 U.S. at 629).  Finally, the Tenth Circuit applied strict scrutiny to uphold a preliminary injunction against a law "criminaliz[ing] the dissemination by computer of material that is harmful to minors."  *ACLU v. Johnson*, 194 F.3d 1149, 1155-58 (10th Cir. 1999).  The statute there even provided an affirmative defense for anyone who took reasonable steps to prevent minors from accessing "indecent materials . . ., including [by] any method that is feasible with available technology."  *Id*. at 1152 (cleaned up).  The panel majority's decision here thus conflicts with the reasoning of these other circuits, underscoring that Appellees' petition will present a substantial question for Supreme Court review.  S. Ct. R. 10(a).

### 3.   *This Court's Decision Presents An Exceptionally Important Question*

This Court's decision also will have grave practical consequences on an "important federal question." S. Ct. R. 10(a) & (c). The issue presented has exceptional importance, as recognized by six amici spanning the ideological spectrum. *See* Dkt. #86 (Brief of ACLU, FIRE, et al.). If the panel majority's decision stands, the Act will continue to inflict severe, irreparable, lasting harm across Texas through the profound chilling effect of its age-verification provisions. *See infra* at 17-18. Indeed, "[s]even other states . . . have recently passed similar laws." Op. 7 n.11. This Court's decision will thus reverberate across state lines, influencing other legislatures and courts. As the latest in a series of cases involving preliminary injunctions defending adults' First Amendment rights to protected sexual expression, this case presents "an important question" that "should be[] settled by" the Supreme Court, S. Ct. R. 10(a) & (c)—as the Court did by granting review in *Reno*, *Ashcroft*, and other cases involving the First Amendment's implications for state laws, *see, e.g.*, *Netchoice LLC v. Paxton*, 49 F.4th 439 (5th Cir. 2022), *cert. granted*, 144 S. Ct. 477 (2023) (No. 22-555); *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1885 (2018).

**B.    Good Cause Exists Because Appellees Will Otherwise Continue To Suffer Irreparable Harm**

Good cause exists because, without a stay, Appellees will continue to suffer irreparable and inequitable harms. *See Baldwin*, 715 F.2d at 153. This Court has unanimously held that the Act is likely unconstitutional in part, and Texas has never argued (nor did the Court hold) that those parts of the Act are severable. Yet— without a stay—Texas will be free to enforce the Act against Appellees and others across Texas while the certiorari process unfolds. Texas has already moved to enforce the Act in state court. Dkt. #131. It has filed two additional petitions against adult websites in the last week alone.[4] And, as noted, Texas wants to maximize the interim period preceding the Supreme Court's decision on certiorari—to the point of taking many multiples of the time that sufficed for the parties to brief both Texas's stay requests and the merits before this Court. That is not fair play and this Court should not permit such gamesmanship, especially given that the Act's chill of protected sexual expression, analyzed in detail by the district court but unaddressed by the panel majority, spreads across Texas.[5] "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable

---

[4] *See* https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-sues-two-more-pornography-companies-violating-texas-age-verification-law.

[5] *See* https://www.cnn.com/2024/03/15/tech/vpn-searches-spike-texas-pornhub/index.html.

injury," and readily constitutes good cause for a stay of the mandate. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also* ROA.1763-67.

The district court made specific factual findings about the irreparable harms linked to the Act's age-verification provisions. Op. 63-70 (Higginbotham, J., dissenting in part); *see* ROA.1726-32, 1764-66. The core factual finding here—unchallenged under clear-error review—is that transmitting personal information over the Internet, particularly to access sensitive content, comes with serious risks and concerns of identity theft, tracking, and extortion that are simply not present when showing an ID at a bookstore. ROA.1726-32. Appellees also face losses in viewership that might not be recovered once adults turn elsewhere for sexual expression. *See* ROA.1765.

Although the panel majority differs as to the constitutionality of the age verification provisions of the Act, the majority has not otherwise faulted the district court's analysis of irreparable harm and the equities, nor has it denied that the Supreme Court's decisions in *Reno* and *Ashcroft* are to the same effect. This Court should not permit a continuing stay of the preliminary injunction, which would result in lasting damage, before the Supreme Court decides whether to review the case.

## II. CONSISTENT WITH STAYING THE MANDATE, THIS COURT SHOULD VACATE ANY REMAINING STAY PENDING APPEAL

Without opposing a stay of the mandate, Texas suggests that a stay of the preliminary injunction pending appeal—which this Court unanimously vacated after

completing its review of the preliminary injunction—should remain. That position is doubly flawed. This Court's now-vacated stay of the preliminary injunction would not spring back to life if the Court stayed the mandate. Alternatively, if it would, the *Nken* factors would not justify it, requiring vacatur.

### A.     Staying The Mandate Would Not Restore The Stay Pending Appeal

The panel has already vacated the stay pending appeal upon resolving the merits. Op. 2. That vacatur is separate from the mandate by definition, as the mandate is what the district court implements on remand after this Court relinquishes jurisdiction, and a district court could not implement a stay pending appeal that has already run its course. *See In re Deepwater Horizon*, 928 F.3d 394, 398 (5th Cir. 2019). "The purpose of a stay-pending-appeal is to relieve the losing party of the burden of changing his behavior unnecessarily" until the court of appeals adjudicates the merits. *Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cnty.*, 112 F.3d 652, 669 n.23 (3d Cir. 1997). Setting aside that the stay in this case *enabled* Texas to change its behavior by enforcing a novel law for the first time, this Court has adjudicated the merits of the appeal. The governing standard is therefore set forth by Rule 41(d), which controls whether the appealed order should be modified by the mandate or restored pending a petition for further review. It follows that this Court's stay pending appeal would remain vacated, per the panel's opinion, even as issuance of the mandate is stayed pending certiorari.

### B.     A Stay Pending Appeal Is Unwarranted Regardless

In any event, if the Court stays the mandate, there will be no basis for concluding that Texas can satisfy the factors for a stay pending appeal.  This Court never engaged with those factors previously.  *See Texas*, 2024 WL 1163923, at *1-*3 (Barrett, J., concurring); *Plaquemines Par.*, 84 F.4th at 373, 378.  And even if a stay was warranted before, it lacks justification now.  The Court has unanimously concluded that the health warnings are likely unconstitutional, and Texas has never argued that they are severable, as would be an essential premise for narrowing the injunction's scope.  *See Planned Parenthood League of Massachusetts v. Bellotti*, 641 F.2d 1006, 1023 (1st Cir. 1981) (holding severability "must" be considered in narrowing a preliminary injunction); *Nat'l Advert. Co. v. Town of Babylon*, 900 F.2d 551, 557 (2d Cir. 1990) (upholding preliminary injunction in whole).[6]

Moreover, in staying the mandate, this Court will have concluded that Appellees have a reasonable prospect of obtaining review and reversal of this Court's age-verification holding, and that good cause exists.  There is no way to conclude simultaneously that Texas has the requisite likelihood of success on the merits and equitable entitlement to support a stay pending appeal.  Whereas

---

[6]  Because Texas never raised severability, it has waived the issue. *Compare Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 951 (9th Cir. 2011) (waiver of severability by the government), *with Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 393 n.21 (5th Cir. 2008) (no waiver because "the FDA stated its position on severability in the body of its brief").

Appellees will continue to suffer numerous and severe irreparable harms, *see supra* at 17-18, those facing Texas are limited because the Act permits sexual content to reach minors from search engines and social media and is easily overcome by tech-savvy minors. ROA.1715-17, 1739.  As the district court found and this Court did not disturb, the Act thus "fails to reduce the online pornography that is most readily available to minors."  ROA.1716-17.  To the extent that Texas would lament dissolution of the stay, it can protect its interests by accepting Appellee's reasonable proposal to complete the certiorari process within three months.  By contrast, Texas may have every incentive to *elongate* that period and milk the attendant chill at Appellees' expense if it is permitted to leverage a stay of the preliminary injunction that has yet to be analyzed or explained under the relevant factors.

The Supreme Court's own handling of similar cases is especially instructive. The Court has twice upheld unstayed preliminary injunctions in analogous circumstances, specifically directing that if the constitutional question is close and First Amendment rights hang in the balance, the scales favor upholding preliminary relief.  *Ashcroft*, 542 U.S. at 664-65, 670 ("If the underlying constitutional question is close ... we should uphold the injunction" because the "potential harms from reversing the injunction outweigh those of leaving it in place by mistake.").

Courts have followed that instruction where the First Amendment caselaw "remains unclear," *Thalheimer v. City of San Diego*, 645 F.3d 1109, 1128 (9th Cir.

2011), *later overruled on other grounds*, 941 F.3d 1195—and, indeed, when confronting the *same* perceived conflict between *Ginsberg* and *Reno* at issue here. *See Cyberspace Commc'ns, Inc. v. Engler*, 238 F.3d 420 (6th Cir. 2000), *affirming Cyberspace, Commc'ns, Inc. v. Engler*, 55 F. Supp. 2d 737, 747 (E.D. Mich. 1999) (discussing *Ginsberg* and *Reno*). Here, Judge Higginbotham's dissent and the reasoning of the panel majority show there is at least a close question whether *Ginsberg* or *Ashcroft* should apply to this case. *Ashcroft*'s express instruction—which this Court did *not* distinguish—counsels against any further stay of the preliminary injunction.

Finally, and at the very least, there is no basis for a stay pending appeal of the preliminary injunction as to the health warnings—which the Court unanimously found are likely unconstitutional—so the stay should at a minimum be vacated as to that part of the preliminary injunction.

## CONCLUSION

The Court should stay issuance of the mandate and vacate any stay pending appeal—at a minimum vacating any stay with respect to the Act's "health warnings"—pending the filing and disposition of Appellees' petition for a writ of certiorari.

Dated: March 25, 2024          Respectfully submitted,

*/s/ Derek L. Shaffer*
Derek L. Shaffer
*Counsel for Appellees*

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system.  I also certify that service will be accomplished on all registered CM/ECF users by the appellate CM/ECF system, that any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13, and that the document has been scanned with CrowdStrike Falcon software and is free of viruses.

Dated:  March 25, 2024          *s/    Derek L. Shaffer*
                                Derek L. Shaffer

                                *Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

I certify the following in compliance with Federal Rule of Appellate Procedure 32(g): The foregoing motion is in 14-point, proportionally spaced Times New Roman font and contains 5176 words, excluding the parts of the document exempted by Rule 32(f).

Dated:  March 25, 2024          *s/   Derek L. Shaffer*
                                Derek L. Shaffer

                                *Counsel for Appellees*